THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE BAKER *et al.*, Defendants-Appellants.

First District (5th Division)    No. 78-71

Opinion filed May 25, 1979.

T. Lee Boyd, Jr., and Isaiah S. Gant, both of Boyd & Gant, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder and Lee Hugh Goodman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendants were each convicted of armed robbery and were sentenced to prison terms of 10 to 30 years. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2(a).) On appeal, defendants contend that: (1) the trial court erred in giving a non-IPI instruction tendered by the State; (2) the trial court erred in refusing to give an instruction tendered by defendants on a lesser included offense; (3) the trial court erred in giving

an instruction relative to the recent possession of stolen property; and (4) the sentences were excessive. We affirm the trial court. The facts relevant to these issues follow.

Tommie Tinner testified that on December 8, 1975, at approximately 9 p.m., he left his home at 4101 South Federal to go to work. He started his car, a 1965 red Oldsmobile, and as he stood cleaning the snow off, he noticed two men walking down the street. At trial, Tinner identified these men as defendants Eddie Baker and Tony Smith. Tinner stated that as they approached, Smith remarked to him, "There sure is a lot of snow," and Tinner replied, "Sure is," as he continued to remove the snow. Meanwhile, Baker passed in front of the car, walked around to the rear of the car and grabbed Tinner from behind. Tinner then turned around and looked directly into Baker's face. At this time, Smith stuck a gun in Tinner's side and said, "Have you ever been shot in the side before?" Smith then ordered Tinner to get on the ground and he did so. Tinner testified that Smith held the gun during the incident and that Smith took $12.50 from his pocket and that Baker took his wallet. Baker then got into the car and the engine died, whereupon he asked Tinner, "Can you get this thing running?" Smith then proceeded to start the car and shortly thereafter he and Baker drove away.

Tinner shouted for someone to call the police, who arrived approximately 15 to 20 minutes later. Tinner got into the squad car and the police searched the area for his car. Upon finding no sign of the car, the police returned to Tinner's home. At this time, the police proceeded to the 3900 block of Federal, where Tinner saw his car and defendants being taken out of it by other police. Tinner, driving his car, followed the police to the station, where he viewed mug shots but did not make any identifications at that time. At trial, Tinner made the following identifications: (1) People's Exhibit No. 1 as his wallet and as the same wallet he saw lying on the table at the police station; (2) People's Exhibit No. 2 as his money clip. However, as to People's Exhibit No. 3, he was not sure if it was the same weapon used in the holdup.

On cross-examination, defense counsel questioned Tinner as to any prior association with defendants and Tinner denied ever having known them. Defense counsel then attempted to impeach Tinner through the introduction of prior inconsistent statements made during a preliminary hearing, where Tinner had testified that Baker held the gun during the incident and remarked to Tinner that this was a holdup. After the testimony was read, the trial judge remarked that it appeared as though Tinner had identified Smith as Baker. Defense counsel then made inquiry regarding Tinner's sight problem. Tinner admitted that he had previously undergone an eye operation on one of his eyes and that he wore glasses while driving, but that he did not have them on during the incident.

On redirect examination, Tinner stated that there was no eyeglass restriction on his driver's license and that he did not have any difficulty seeing anyone in the courtroom. When the State's Attorney questioned Tinner as to his testimony offered during the preliminary hearing, Tinner stated that the courtroom was crowded and everyone was standing in a line. When asked the questions, "[w]hat did he do?" and if he understood who the question referred to, Tinner responded that the person stood directly in front of him.

Police officer Joseph Cosentino testified that on the evening of December 8, 1975, after receiving a radio alert, he and his partner proceeded to the vicinity of 35th and Federal. While driving through a parking lot, they noticed a 1965 red Oldsmobile proceeding northbound on Federal. Cosentino drove out of the lot and pulled directly behind the car which had stopped at approximately 3525 Federal, and he radioed for assistance. He stated that Baker was sitting on the driver's side and Smith was getting out of the car on the passenger side as he and his partner approached with their guns drawn. Cosentino proceeded to the driver's side and ordered Baker to put his hands on the steering wheel. He then opened the door and told Baker to get out of the car. Meanwhile, his partner had taken Smith to the rear of the car. At that time, Tinner arrived and identified the car as his.

At trial, Cosentino identified People's Exhibit No. 1 as one of the wallets lying on the front seat of the car and People's Exhibits Nos. 3 and 4, respectively, as the weapon he recovered from the car and the cartridges he had taken from the weapon. Cosentino further testified that defendants were then taken to the police station, while Tinner followed in his car. Upon arrival, defendants were taken to an interview room, where Cosentino conducted a search, during which time he directed defendants to take all items from their pockets and place them on the table. Cosentino stated that he left the room for a few seconds and as he reentered he saw Baker drop a shiny object on the floor and kick it away. Cosentino retrieved the object, which was a money clip, and asked Tinner if he owned such an item and for a description of it. Tinner described the money clip he owned and his description matched that of the money clip Cosentino had retrieved.

On cross-examination, Cosentino admitted that there were no fingerprints taken from the weapon nor the wallet and that the license number of the car he stopped was not the same, but only similar to the number he had received over the radio. He stated that Tinner never mentioned that he owned a money clip prior to the incident at the police station.

Defense counsel moved to suppress and quash the arrest on the grounds that there was no probable cause for the arrest based on the

testimony elicited from Cosentino on cross-examination. The motion was denied. The State then rested.

The only evidence presented by the defense was the testimony of Tony Smith. He stated that on the day in question, he and Baker had been drinking rose wine and had decided to go to a party on 36th and Federal that evening. They arrived at the party at approximately 9 p.m., however, due to Smith's extremely intoxicated condition, they had to leave at approximately 10 p.m. Baker assisted him as they left and Smith recalled that he was put into a white car, where he passed out. He stated that the next thing he remembered was a police officer slamming him against the car. As the officer continued to slam him around, he put a gun in Smith's face and asked, "Is this yours?" The officer then dragged him to the squad car, put him in the back seat, and they proceeded to the station. After arriving at the station, Smith was taken to the washroom because he had to vomit. As he was leaving the washroom he saw a man walking towards him whom he identified as Tinner. Smith stated that this was the first time he had seen Tinner that night. He further stated that Baker was present at that time and that Baker said to Tinner, "Don't I know you?" and Tinner replied, "Yes."

On cross-examination, Smith offered additional testimony regarding his level of intoxication. He stated that he had consumed approximately four pints of wine on the afternoon of the day in question and had shared an additional fifth of wine with Baker while enroute to the party. Smith denied ever taking Tinner's money, wallet, or money clip and that he did not see the wallet or gun in the car nor did he see Baker kick the money clip under the table. The defense then rested.

During the instructions conference, the trial court gave, over defendants' objection, a non-IPI instruction tendered by the State, which stated that "intoxication is not a defense to the crime of armed robbery." The trial court then refused to give IPI Criminal Instruction No. 13.01, as to a lesser included offense, tendered by defendants, over defendants' objection. The trial·court also gave IPI Criminal Instruction No. 13.21 relative to the recent possession of stolen property over defendants' objection by way of post-trial motion. Subsequently, the jury found defendants guilty of armed robbery and they were sentenced to prison terms of 10 to 30 years. The defendants now appeal those convictions.

OPINION

■■ Defendants first contend that the trial court erred in giving the non-IPI instruction tendered by the State that "intoxication is not a defense to the. crime of armed robbery." In support of this argument, defendants rely on *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337, which held

that specific intent is an element of robbery and armed robbery and that voluntary intoxication could be a defense, if defendant could demonstrate that he was so intoxicated as to negate the specific intent needed to commit the crime. At oral argument, however, defense counsel conceded this issue in light of the recent pronouncement by the Illinois Supreme Court in *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244, where the court specifically overruled *White* in holding that specific intent is not an element of robbery and armed robbery. As such defendants cannot avail themselves of the intoxication defense and we find that the trial court was proper in giving the instruction.

Next, defendants contend that the trial court erred in refusing to give IPI Criminal Instruction No. 13.01 as follows:

"A person commits the crime of theft who knowingly obtains or exerts unauthorized control over property of the owner, and

(1) intends to deprive the owner permanently of the use or benefit of the property; or

(2) knowingly uses, conceals, or abandons the property in such manner as to deprive the owner permanently of its use or benefit; or

(3) uses, conceals, or abandons the property knowing that the owner will thereby probably be permanently deprived of its use or benefit."

Defendants argue that the crime of theft is a lesser included offense of armed robbery and that the evidence was sufficient to warrant such an instruction. We disagree.

■■ An included offense is defined as an offense which is "established by proof of the same or less than all of the facts or a less culpable mental state [or both], than that which is required to establish the commission of the offense charged * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 2—9(a); *People v. Thompson* (1977), 55 Ill. App. 3d 795, 797, 371 N.E.2d 326, 328.) This statute has been interpreted to require that an offense is a lesser included offense only if the greater offense charged contains all of the elements of the lesser included offense plus some additional elements. (*People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197; *People v. Shoemaker* (1975), 31 Ill. App. 3d 724, 334 N.E.2d 347.) In Illinois, a person commits armed robbery when he or she takes property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a dangerous weapon. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2(a).) The gravamen of theft is obtaining or exerting unauthorized control over the property of another with the intent to permanently deprive him of the use or benefit thereof. Ill. Rev. Stat. 1975, ch. 38, par. 16—1.

■ According to the definitions set forth above, the crimes of armed

robbery and theft contain some of the same elements. However, a critical distinction between the two crimes is the element of "intent to permanently deprive," which is only contained in the crime of theft, the alleged lesser-included offense. In light of this fact and in accordance with our discussion of the previous issue, we find that theft is not a lesser-included offense of armed robbery. Additional support for this court's position can be found in *People v. Yanders* (1975), 32 Ill. App. 3d 599, 335 N.E.2d 801, where the court expressly overruled *People v. Howell* (1973), 11 Ill. App. 3d 391, 296 N.E.2d 760, one of the principle cases relied upon by defendants. In *Yanders*, court said:

"* * * we cannot see how the offense of theft, an element of which is the actor's specific intent to permanently .deprive the victim of property, can logically be held to be included in the offense of robbery where no such specific intent is required. * * * Any holding in *People v. Howell* which is contrary to this decision is hereby overruled." (*Yanders*, 32 Ill. App. 3d 599, 602-03, 335 N.E.2d 760, 804.)

We therefore hold that the trial court properly refused the instruction relating to theft as it is not a lesser included offense of armed robbery.

Defendants also argue that the trial court erred in giving IPI Criminal Instruction No. 13.21 as follows:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by armed robbery."

They contend that the instruction denied them of their rights to a fair trial and due process under both the Illinois and United States constitutions in that the instruction invades the province of the jury as the collective body charged with the responsibility of determining the inferences to be drawn from the evidence. We find this contention unpersuasive.

It is well settled in Illinois that the recent, exclusive and unexplained possession of stolen property by an accused gives rise to an inference of guilt, absent other facts and circumstances which leave in the minds of the jurors a reasonable doubt as to guilt. (*People v. Hawkins* (1963), 27 Ill. 2d 339, 341, 189 N.E.2d 252, 253; *People v. Woods* (1963), 26 Ill. 2d 557, 562, 188 N.E.2d 1, 4; *People v. Barnes* (1963), 26 Ill. 2d 563, 566, 188 N.E.2d 7, 9.) "The presumption that the possessor of recently stolen property is the thief is an inference which the jury may be permitted to draw based on human experience and common sense from known events or circumstances." *People v. Barber* (1974), 20 Ill. App. 3d 977, 979-80, 313 N.E.2d 491, 494.

In the case at bar, the evidence shows that at the time of their arrests, defendants were in the 1965 red Oldsmobile owned by Tommie Tinner.

At trial, Officer Cosentino identified a wallet belonging to Tinner as one of the items he recovered from the car occupied by defendants. He also identified a money clip belonging to Tinner that defendant Baker dropped on the floor during a search conducted at the police station. Based on these facts and absent other facts which create a reasonable doubt as to defendants' guilt, we find that defendants were in possession of the recently stolen property and that this served as a foundation for the giving of the instruction.

■■ As to defendants' contention that the instruction denied them a fair trial and due process under the Illinois and United States constitutions, we find this contention to be without merit. In *People v. Burris* (1969), 116 Ill. App. 2d 79, 253 N.E.2d 628, defendant made a similar assertion and the court rejected this argument based on the test that for a presumption to be consistent with due process there must be a rational connection between the facts proved and the facts presumed. Applying this test to the circumstances presented here, we find, as did the court in *Burris*, that the exclusive possession instruction satisfied this test. Consequently, the instruction does not infringe upon any constitutional rights guaranteed to defendants nor does it invade the province of the jury. Thus the trial court did not err in so instructing the jury.

Defendants' final argument is that the 10- to 30-year sentences were excessive in view of defendants' respective ages, social background, prior criminal background and other circumstances that may be considered by a trial court in sentencing matters. We disagree.

The length of sentence to be imposed upon a convicted defendant in a given case is a matter that lies within the sound discretion of the trial court, and absent an abuse of that discretion, a sentence imposed will not be disturbed on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Moreover, great deference and weight is given to the court's decision on review based on the recognition that the trial court is in a better position to determine a sentence than that which a cold record affords a reviewing court. *People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330.

In the instant case, the trial judge considered the nature of the crime committed and all materials set forth in the presentence reports of both defendants. The evidence shows that defendants, while armed with a gun, came upon their victim and threatened to shoot him. After ordering him to get on the ground, defendants took his car, his money, and other personal items. In commenting on this evidence, the trial judge stated:

"[A]s I look across this bench at the defendants, I see two men, during the instant case, came upon a victim in a manner of a hungry animal, coming upon his prey. They were detached, discompassionate, unconcerned, without feeling, for the victim."

■■■ There was also testimony presented by defendant Smith during the sentencing hearing which, in the court's opinion, lacked persuasive force. Notwithstanding the fact that defendant Smith had no prior convictions, we, as a reviewing court, are not required to reduce the sentence on that basis. (See *People v. Ware* (1973), 11 Ill. App. 3d 697, 297 N.E.2d 289.) Defendant Baker's presentence report indicated that he was on probation for attempt auto theft at the time of the robbery. In imposing sentence, the trial judge may have considered the actions of defendant while on probation, which reasonably bore upon his potential for rehabilitation. (See *People v. Koppen* (1975), 29 Ill. App. 3d 29, 329 N.E.2d 421.) Defendant Baker's commission of the offense of robbery, only 7 months after being placed on probation on an auto theft charge, reflected very adversely upon his rehabilitative potential.

■■ As a reviewing court our only function is to determine whether the trial court abused its discretion when imposing the sentence. Therefore, in light of the facts before us, we cannot say that the trial court abused its discretion in this case.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.