THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMMY GIBSON *et al.*, Defendants-Appellants.

First District (4th Division)   No. 82—1753

Opinion filed October 3, 1985.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and John G. Murphy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendants Sammy Gibson, James Burdine and Norman Bonds were convicted of armed robbery and home invasion. In addition, defendants Gibson and Bonds were convicted of rape and deviate sexual assault. Burdine was sentenced to 15 years in the Illinois Department of Corrections for armed robbery and 15 years for home invasion. Gibson and Bonds were each sentenced to 30 years for armed robbery, 30 years for home invasion, 30 years for deviate sexual assault and 30 years for rape. All sentences were to run concurrently.

On appeal, defendants contend (1) that the trial court committed reversible error by denying their motions for severance; (2) that the State failed to prove them guilty beyond a reasonable doubt of armed robbery; (3) that the trial court erred by failing to instruct the jury on the lesser included offense of theft; (4) that the prosecutor's closing argument deprived them of a fair trial; and, (5) that the trial court erred by failing to take remedial action to cure a prejudicial comment and gesture made by a juror during *voir dire*.

We affirm.

BACKGROUND

Testimony at trial disclosed that on July 8, 1981, at about 5 a.m., defendants, armed with guns, entered an apartment located at 2145 South Kedzie in Chicago, where the victim, Elizabeth, and her three children were sleeping. Elizabeth testified that at that time she heard her door click and observed three individuals enter her apartment. Elizabeth asked the men what they wanted as she reached into a kitchen drawer. One of the intruders, whom she later identified as defendant Gibson, ordered her to take her hand out of the drawer, and struck her near the temple with the gun he was holding. The man she later identified as defendant Bonds also struck her in the head with the gun he was holding.

According to Elizabeth, she then told Bonds that she needed to use the bathroom. Her further testimony indicates that Gibson instructed Bonds to take her to the bathroom, and that Bonds took her there. After Elizabeth was finished using the bathroom, Bonds refused to let her exit, ordering her to the floor. Bonds then asked her where she kept her money, and she replied that she had none. Bonds thereupon grabbed one of her breasts and commanded her to stand up and lean over the sink. When she did as he told her, Bonds pulled up her gown and pulled her panties down, allowing them to drop to the floor. Elizabeth testified at this point in time she began to cry. Bonds then unzipped his pants and inserted his penis into her vagina, all the time holding his gun in her back. After a few minutes, Bonds withdrew his penis from Elizabeth's vagina and inserted it into her rectum.

Defendant Gibson, whom Elizabeth said was wearing an "M & M's" t-shirt, next entered the bathroom and told Bonds to move out of the way. Gibson inserted his penis in Elizabeth's vagina and, after a time, into her rectum. Afterwards, Gibson urinated on Elizabeth's back. During this time, Bonds had forced his penis into Elizabeth's mouth, threatening to "blow her brains out" if she bit him. Bonds then ordered Elizabeth onto her knees, again forcing his penis into her mouth until he ejaculated. Elizabeth was then told to lie on the floor while her hands and feet were bound with a belt. As she laid on the floor, Bonds again inserted his penis into her rectum, warning her that she would be killed if she ever told anyone what had just occurred.

After the defendants fled, Elizabeth untied herself and discovered that the door to the room where the children were sleeping was

tied up with a telephone cord. She untied the cord, found that her children were unharmed, and she then called police. Later, she discovered that $120.00 worth of food stamps, $57.00 in cash, and a clock radio were missing from her apartment.

James, Elizabeth's son, 11 years of age, testified that while his mother was in the bathroom with Bonds, he saw Gibson enter the bedroom and take jewelry and money from the dresser drawers. James observed that Gibson was wearing an "M & M's" t-shirt at the time of defendants' entry into the apartment. James also stated that Burdine, whom he knew as "Meatball," was peeping through the bedroom door while holding a gun.

Defendants Gibson, Burdine and Bonds fled from the apartment. They were arrested later the same day. The clock radio which had been reported as stolen, and the "M & M's" t-shirt which Elizabeth and James said Gibson was wearing, were both recovered at Gibson's residence. Both Elizabeth and James identified Bonds and Gibson in a lineup. James also identified Burdine in a lineup.

Each defendant made inculpatory statements which were introduced into evidence. In their respective statements, Burdine and Gibson each stated that it was the other of the two who accompanied Bonds into the bathroom where Elizabeth was sexually assaulted. Bonds said that it was he and Gibson who were in the bathroom with Elizabeth.

Defendants were tried jointly before a jury. Defendant Burdine was tried for armed robbery, burglary, and two counts of home invasion. Bonds was tried for armed robbery, home invasion, rape, two counts of burglary and three counts of deviate sexual assault. Gibson was tried for armed robbery, deviate sexual assault, home invasion and rape. None of the defendants testified at trial.

At the conclusion of the trial, defendants were found guilty of all charges. After a hearing in aggravation and mitigation, defendants were sentenced to concurrent terms by the trial court for offenses and periods noted herein.

Defendants now appeal from their convictions and their sentences.

OPINION

I

Defendants initially contend that the trial court erred by failing to grant them separate trials. The State, in turn, contends that defendant Gibson waived his right to review of this issue because he

failed to seek severance and failed to raise this issue in his post-trial motion.

## WAIVER

■■ "Issues, including constitutional issues, not raised in the trial court are generally considered waived on appeal and cannot be urged as grounds for reversal on review." (*People v. McGrew* (1984), 128 Ill. App. 3d 464, 469, 470 N.E.2d 1157, 1161.) The Criminal Code of 1961 requires that a party seeking review must first present a written motion for new trial to the trial court specifying the grounds therefore. (Ill. Rev. Stat. 1981, ch. 38, par. 116—1.) Failure to raise with specificity the issue posed on appeal denies the trial court the opportunity to correct the alleged error and to give the appellate court the benefit of the trial court's judgment. *People v. Irwin* (1965), 32 Ill. 2d 441, 443-44, 207 N.E.2d 76, 78.

In this case, defendant Gibson's motion for new trial consists only of conclusory allegations which do not specify the issues raised on appeal. Because Gibson has failed to address the severance issue in his post-trial motion, he has waived it on review. (*People v. Visnack* (1985), 135 Ill. App. 3d 113, 118.) Therefore, we will consider the severance issue in this case only as it applies to defendants Burdine and Bonds since they did raise the issue properly and timely. We note, however, that our analysis of the established law would apply equally to Gibson had he not waived the issue at hand.

## SEVERANCE

The Criminal Code of 1961 provides that every defendant who believes that he will suffer prejudice as a result of joinder of his case with that of a codefendant may request severance by pretrial motion. (Ill. Rev. Stat. 1981, ch. 38, par. 114—8.) The decision to sever trials of joint defendants is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.

Trial courts recognize two common forms of possible prejudice as a basis for severing trials of codefendants. The first type of prejudice occurs when a codefendant has made hearsay admissions that implicate the other defendant. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) The second type of possible prejudice occurs when the defenses of joint defendants are so antagonistic that severance is imperative to assure a fair trial. *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.

## A

Both defendants Burdine and Bonds contend that under the rule in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the admission of their codefendants' out-of-court confessions violated their constitutional right of confrontation under the sixth amendment. In *Bruton*, the Supreme Court held that, in the context of a joint trial, the use of a nontestifying codefendant's confession which inculpates a second defendant violates the second defendant's right to confrontation. This applies even though the jury receives a proper limiting instruction from the court. (391 U.S. 123, 137, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628.) An exception to this rule was announced in *Parker v. Randolph* (1979), 442 U.S. 62, 75, 60 L. Ed. 2d 713, 725, 99 S. Ct. 2132, 2140, where a four-member plurality of the court held that the admission of "interlocking confessions," with a proper cautionary instruction that a particular defendant's confession can only be used against that defendant, did not offend *Bruton*.

In the instant case, defendants Burdine and Bonds argue that since *Parker*, there is some confession as to the proper application of *Bruton* to interlocking confessions. We do not agree. Even before *Parker*, Illinois courts recognized that there is no *Bruton* violation where the complaining defendant himself has made "similar inculpatory admissions." (*People v. Bassett* (1974), 56 Ill. 2d 285, 295, 307 N.E.2d 359, 365.) This has remained true after *Parker* as well. See *People v. Sanders* (1981), 103 Ill. App. 3d 700, 431 N.E.2d 1145.

The foundational inquiry here, then, is whether defendants' confessions are interlocking. Confessions are interlocking when they clearly demonstrate the involvement of each defendant as to certain "crucial facts," such as time, locality, felonious activity and awareness of an overall plan or scheme. (*Parker v. Randolph* (1979), 442 U.S. 62, 67-69, 60 L. Ed. 2d 713, 719-21, 99 S. Ct. 2132, 2136-37.) However, this does not mean that defendants' confessions need be identical. *People v. Sanders* (1981), 103 Ill. App. 3d 700, 431 N.E.2d 1145.

In this case, each of the three defendants' extrajudicial statements placed each one at Elizabeth's apartment at the time in question. Each stated that they were armed and that they intended to take certain property and money belonging to Elizabeth. It is apparent from the record that this was part of an overall scheme plotted out by defendants.

In addition, Bonds and Burdine each stated that it was Bonds and Gibson who were in the bathroom with Elizabeth, and that they

both gave their guns to Gibson after they left Elizabeth's apartment. Bonds also stated that he had sexual intercourse with Elizabeth and that he forced her to perform oral copulation upon him. Burdine stated that Bonds later told him that "the lady gave him a blow job." Defendant Gibson, on the other hand, stated that it was Burdine and Bonds who sexually assaulted Elizabeth.

■■ Despite the variance as to who actually sexually assaulted Elizabeth, and despite the fact that Burdine was not charged with the sex offenses, the record clearly indicates that each of the defendants' confessions recite the same "crucial facts" surrounding the crime. We believe that the nature of these confessions is so similar that the confessions of all three defendants are interlocking. Accordingly, because of the similarity of the inculpatory admissions, we find that the rights of confrontation were not infringed by the statements being received into evidence. This is especially true in light of the fact that the trial court repeatedly cautioned the jurors that the statements were only to be used against the defendant making them.

We also find that a substantial difference exists between the case at bar and the *Bruton* case. Here, the jury heard the codefendants' statements incriminating the other defendants who had made similar, inculpatory statements. In *Bruton,* the codefendant's statements were used against a defendant who made *no* admissions. Although we believe that the trial court should have redacted the admissions, it is clear to us from our review of the record that the jury placed far less weight on the hearsay statements of the codefendants than they did on defendants' self-incriminating admissions, especially in conjunction with the testimony of the other witnesses at trial.

## B

Defendant Burdine next contends that he was prejudiced because his defense, and those asserted by Bonds and Gibson, were so antagonistic that he could not receive a fair trial. However, because Burdine was not charged with the sex-related offenses, as were Gibson and Bonds, we do not find their defenses to these charges to be in any way antagonistic to Burdine. Accordingly, we will address our analysis only to the defenses involving the charges of home invasion, armed robbery and burglary, brought against all three defendants in this case.

Defenses are deemed to be antagonistic when actual and substantial hostility exists between the defendants over their lines of defense. (*People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839.) Applying this rule in *People v. Daugherty* (1984), 102 Ill. 2d 533, 544, 468

N.E.2d 969, 974, our supreme court stated:

"When codefendants have each made statements implicating the other but professing their own innocence, it is almost inevitable that their lines of defense at trial will become inconsistent and antagonistic and severance is necessary to forestall that result and insure a fair trial."

Both *Braune* and *Daugherty* present the classic example of antagonistic defenses where each defendant was protesting his innocence and condemning the other. In both of these cases, our supreme court determined that separate trials should have been granted. We believe that the facts of the instant case are readily distinguishable from those in *Braune* and *Daugherty*.

Although Gibson, Burdine and Bonds all pleaded not guilty, and while each made extrajudicial statements implicating one another, these statements do not alone establish any danger of prejudice arising from antagonistic defenses. A similar situation was decided by our supreme court in *People v. Lindsay* (1952), 412 Ill. 472, 107 N.E. 614, where denial of a motion for severance containing allegations of antagonistic defenses was upheld. Here, as in *Lindsay*, the record discloses that, in each of the statements made, the defendant was not trying to exonerate himself. Rather, it is clear from the record that each defendant, in effect, implicated both *himself* and the other defendants. Because each of these statements agree in substance with the statements of the others regarding the charges in question, we cannot consider the codefendants' defenses to be antagonistic. Therefore, we do not believe that Burdine suffered substantial prejudice by being tried jointly with Gibson and Bonds. Consequently, we do not believe that the trial court erred by denying Burdine's motion for severance.

Even if we determined that severance should have been granted in this case, we are aware that where proof of defendants' guilt is overwhelming, that error may be considered harmless. (*Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726; *People v. Smith* (1973), 15 Ill. App. 3d 10, 304 N.E.2d 50.) Our review of the record evidences that proof of guilt is overwhelming. The defendants did not testify. The testimony of Elizabeth and James, as well as their in-court and out-of-court identifications of defendants, are uncontradicted. There is no conflicting testimony concerning the fact that defendants, all armed, entered Elizabeth's apartment intending to remove certain property; that Bonds and Gibson struck Elizabeth in the head with their weapons; that they raped and sexually assaulted her in the bathroom; and, while she was forced to re-

main in the bathroom, her property was gathered up and taken from the premises. The record also indicates that the clock radio stolen from her apartment and the "M & M's" t-shirt that Elizabeth and James said Gibson was wearing at the time of the offense were both recovered at Gibson's residence. This evidence was sufficient to establish beyond a reasonable doubt that the defendants were guilty as charged.

## II

■ Defendants next contend that the State failed to prove them guilty, beyond a reasonable doubt, of armed robbery. Defendants claim that there is no evidence in the record of a forceful taking in the presence of Elizabeth. The State contends that the evidence adduced at trial supports the jury's finding that there was a forceful taking in the presence of Elizabeth since she was held in the bathroom against her will while her apartment was ransacked.

Section 18—1(a) of the Criminal Code of 1961 defines robbery as follows:

> "A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1981, ch. 38, par. 18—1(a).)

Section 18—2(a) of the Criminal Code of 1961 defines armed robbery as follows:

> "A person commits armed robbery when he violates Section 18—1 while *** armed with a dangerous weapon." (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a).)

In the instant case, defendants rely on *People v. King* (1979), 67 Ill. App. 3d 754, 384 N.E.2d 1013, and *People v. Pack* (1976), 34 Ill. App. 3d 894, 341 N.E.2d 4, for the proposition that the taking of property in this case was neither occasioned by force, nor was it taken from the presence of Elizabeth.

In *Pack*, the fifth district appellate court held that where defendant entered the victim's home, choked her until he thought she was dead, and then took her money from her nearby purse, there was no factual basis to establish the force element of robbery, because the force used against her was to kill and not to steal.

The *Pack* decision was followed by the fourth district appellate court in *King*. There a rape occurred in the bedroom while the victim's purse was taken from the kitchen, 15 to 30 feet away. The court stated that "[n]owhere in the record is there any indication that the purse was taken from the presence of the victim with the

use of force as required by the robbery statute." (*People v. King* (1979), 67 Ill. App. 3d 754, 759, 384 N.E.2d 1013, 1016-17.) Thus, the *King* court noted that the force involved in the rape did not appear from the record to be related to the taking of the purse.

In contrast to the facts presented in *King* and *Pack*, the record in the instant case indicates that defendants intended to rob Elizabeth all along, and that defendant Bonds demanded money from her before the sexual attacks began. The record also discloses that, while Elizabeth was being held in the bathroom and repeatedly raped and sexually assaulted at gunpoint, jewelry, money and other items belonging to her were taken from her apartment. Based on these facts, we believe that a causal connection exists between the force used during the sexual attacks and that exerted during the taking of the property such that the same force exerted during the attacks was sufficient to induce Elizabeth to part with her possessions.

In *People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074, *overruled on other grounds by People v. Pettit* (1984), 101 Ill. 2d 309, 313, 461 N.E.2d 991, 993, a robbery case similar to the case at bar, this court expressly rejected the holdings in *King* and *Pack*. As to the "force element" of the crime of robbery, the *Pavic* court stated that "[t]o the extent that the *Pack* and *King* courts held that the force element of robbery was lacking when the taking of the property occurred 'incident' to the physical assaults in those cases, we disagree with the soundness of the reasoning and decline to adopt it." (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 446, 432 N.E.2d 1074, 1082.) As to the "presence element," the *Pavic* court stated: "The *Pack* court apparently believed that the victim was not 'present' during the taking of the property, but did not cite or consider cases that would support an opposing view. [Citation.]" 104 Ill. App. 3d 436, 446, 432 N.E.2d 1074, 1082.

Like the court in *Pavic*, we choose not to follow the reasoning in *King* and *Pack*. First of all, it is clear from the record that the jury here could well have inferred that the force exerted over Elizabeth was not limited to the sexual attacks. Secondly, the "presence" requirement has never been limited to removal of property from the victim's person or immediate presence. Rather, the test is whether the victim's proximity or control over the property was so close that she could have prevented the taking if she had not been subjected to the "force element." (*People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289.) Here the property was stolen from Elizabeth's presence, because the force exerted upon her in the bathroom at gunpoint caused her to remain there against her will. This facilitated the

taking of her property from her apartment, and the force remained in effect until after defendants fled the scene.

Consequently, we believe that the requirements of proof of the armed robbery statute have been satisfied beyond a reasonable doubt, and defendants' armed robbery convictions must be affirmed.

### III

Defendants next contend that the trial court erred by refusing to give theft instructions to the jury. We agree with the State's position that all three defendants waived review of this issue by failing to raise it specifically in their post-trial motions. (*People v. Rogers* (1975), 32 Ill. App. 3d 788, 336 N.E.2d 784.) Defendant Burdine also waived this issue through his failure to join his codefendants in tendering theft instructions to the trial court. *People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759.

Assuming, *arguendo*, that defendants did not waive review of this issue, the trial court properly refused the theft instruction because there is no evidence in the record which supports or requires tendering theft instructions to the jury.

### A

■ In *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 433 N.E.2d 1091, and *People v. Baker* (1979), 72 Ill. App. 3d 682, 391 N.E.2d 91, this court held that since theft is not a lesser included offense of armed robbery, a defendant charged with armed robbery is not entitled to a theft instruction. We agree with this position noting that an included offense is an offense which is "established by proof of the same or less than all of the facts or a less culpable mental state, than that which is required to establish the commission of the offense charged ***." (Ill. Rev. Stat. 1981, ch. 38, par. 2—9(a).) We cannot see how the offense of theft, which by definition requires a specific intent to permanently deprive the victim of property (Ill. Rev. Stat. 1981, ch. 38, par. 16—1), can be held to be included in the offense of armed robbery which requires no such specific intent. Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a).

Consequently, since defendants were not charged with theft in this case, we hold that the trial court properly refused the theft instruction as it is not a lesser included offense of armed robbery.

### B

Defendants note a split of authority, holding in some cases that theft is a lesser included offense of armed robbery, citing, *inter alia,*

*People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597. We need not comment on this conflict because, even if we were to conclude that theft is a lesser included offense of armed robbery, we have already determined that there is no doubt in the record that defendants were proved guilty, beyond a reasonable doubt, of armed robbery.

■ While it is true that a charge of armed robbery was reduced to theft in *People v. Williams*, the court there noted that there was insufficient evidence to convict the defendant of robbery. (*People v. Bradford* (1979), 78 Ill. App. 3d 869, 397 N.E.2d 863.) This is clearly not the case here where there is overwhelming evidence of defendants' guilt. We therefore hold that the trial court's refusal to instruct the jury on theft in no way prejudiced defendants under the facts of this case.

## IV

Defendants' next contention is that they were denied a fair trial because they were prejudiced by the prosecutor's comments in rebuttal that one of the State's witnesses was inherently credible. We are not persuaded by defendants' argument.

■ In order to merit reversal, the prosecutorial conduct must be of such a nature that the verdict would have been different had the prosecutor refrained from making the comments, and the comments must have been a material factor in defendants' convictions. (*People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.) In our view, the remarks in rebuttal that the assistant State's Attorney who received statements from Burdine and Bonds had attended Hebrew Union College, a rabbinical seminary, had worked for the American Civil Liberties Union, and that he had taken "an oath to God," even if improper, were not material factors in defendants' convictions, nor did they result in substantial prejudice to the accused.

At trial, the court instructed the jurors to consider only the evidence presented at trial, and that they were to disregard statements made in argument not based on the evidence. We find that this action by the trial court cured any prejudice that might have resulted from the prosecutor's argument in rebuttal.

In addition, from our view of the record, we also find that the prosecutor's comments in rebuttal were invited to some extent by defendants. While these comments are not condoned by this court, they are not sufficiently improper so as to compel reversal. This is especially true given the overwhelming evidence of defendants' guilt in this case.

## V

■ Defendants finally contend that the trial court should have granted a motion for mistrial because the jury was tainted as a result of comments made by one of the prospective jurors during *voir dire*. Although all three defendants have failed to raise this issue in their post-trial motions, and have thereby waived this issue on review, we will nevertheless discuss it here.

The determination of whether or not a prospective juror possesses the state of mind that will allow him to give the accused a fair and impartial trial rests in the sound discretion of the trial judge. This determination should not be set aside unless it is against the manifest weight of the evidence. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) Here, it is defendant's burden to prove that jury prejudice exists and that there is reasonable apprehension that they cannot receive a fair trial. *People v. Witte* (1983), 115 Ill. App. 3d 20, 29, 449 N.E.2d 966, 973.

In the case at bar, during *voir dire*, a prospective juror, while pointing to defendants, stated: "I cannot be impartial to these defendants because four years ago, my daughter was killed by a young man such as these, about this age were involved and I feel very, very prejudiced." The trial judge promptly dismissed the prospective juror from the venire. *Voir dire* continued and a jury was impaneled and sworn. Subsequently, defendant Gibson's attorney moved for a mistrial claiming that the comments and gestures of the dismissed venireman prejudiced the jury.

Based on the record, defendants have failed to meet their burden of showing that the jury prejudice did indeed exist *prima facie*. Each of the impaneled jurors was subjected to the scrutiny of the trial court and counsel for all of the parties in an effort to elicit possible prejudice. Those jurors who indicated that they could not be fair were dismissed for cause, whereas others were dismissed by the parties' peremptory challenge. The jurors who were selected and sworn apparently satisfied the court and the parties that they could be fair. There was no indication from the impaneled jurors that the dismissed venireman's comments and gesture had any effect on them. Moreover, defendants did not challenge for cause any of the jurors impaneled by the trial court, and only opted to use 12 of their 18 peremptory challenges. Accordingly, defendants have failed to make a sufficient showing from the record that the jury was tainted, or that the trial court in fact abused its discretion in denying defendant Gibson's motion for mistrial.

We note that even if the dismissed venireman's comments tended

towards being prejudicial, the trial court cured any prejudicial effect through adequate *voir dire* and through jury instructions admonishing the jury only to consider the evidence.

For all of the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.