THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SAMMY GIBSON *et al.*, Defendants-Appellants.

First District (4th Division)   No. 82—1753

Opinion filed May 21, 1987.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Peter D. Fischer, and Jane H. Miller, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

This cause is before us on remandment from the United States Supreme Court, that court having vacated the conviction of Norman Bonds and remanded the case for our further consideration in light of *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056.

*Gibson v. Illinois* (1986), 476 U.S. 1167, 90 L. Ed. 2d 974, 106 S. Ct. 2886.

On October 3, 1985 we affirmed the convictions of Sammy Gibson, James Burdine, and Norman Bonds. (*People v. Gibson* (1985), 137 Ill. App. 3d 330, 484 N.E.2d 858, *appeal denied* (1986), 111 Ill. 2d 573.) All three were convicted of armed robbery and home invasion, and Gibson and Bonds were also convicted of rape and deviate sexual assault. The circumstances of the crimes are fully set forth in that opinion, and we will include herein only those facts that may be necessary for a full understanding of the issues raised.

Following the Illinois Supreme Court's denial of defendant's appeal from our decision, defendants Gibson and Bonds petitioned the United States Supreme Court for *certiorari*. The court denied Gibson's petition but granted that of Norman Bonds, the only defendant whose conviction was vacated and remanded to us for further consideration.

Counsel for the State and for Bonds have filed supplemental briefs and both agree that the central issue posed by *Lee v. Illinois* is whether the introduction of Gibson's and Burdine's statements at trial constituted harmless error beyond a reasonable doubt.

BACKGROUND

In the United States Supreme Court's decision in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the court held that, in the context of a joint trial, the use of a nontestifying codefendant's confession which inculpates another defendant violates that defendant's rights under the confrontation clause of the Federal Constitution. Even if the jury is instructed to use the codefendant's confession only against that defendant, the possible prejudice to the second defendant is considered too great to justify the admission of the codefendant's confession.

In *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, the *Bruton* rule was modified to the limited extent that a codefendant's inculpatory statement may be admitted into evidence if defendant has also confessed and his confession sufficiently "interlocks" with that of the second defendant. In addition, the jury must be instructed to consider a particular confession against the defendant who gave the confession only.

In *Lee v. Illinois* (1986), 476 U.S. 530, 545, 90 L. Ed. 2d 514, 529, 106 S. Ct. 2056, 2064-65, the Supreme Court had this to say about the "interlocking confessions" exception to *Bruton*: "[A] confession is not necessarily rendered reliable simply because some of the facts it contains 'interlock' with the facts in the defendant's statement. ***

The true danger inherent in this type of hearsay is, in fact, its selective reliability. As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another. If those portions of the codefendant's purportedly 'interlocking' statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment. In other words, when the discrepancies between the statements are not insignificant, the codefendant's confession may not be admitted."

OPINION

Initially, we shall reevaluate the admissions of Bonds' codefendants' statements in light of the principles set forth in *Lee v. Illinois*.

The circumstances under which the United States Supreme Court found unconstitutional the use of the codefendant's confession against the petitioner in *Lee v. Illinois* are as follows. Millie Lee and her boyfriend, Edwin Thomas, were charged with the murders of Lee's aunt, Mattie Darden, and her aunt's friend, Odessa Harris. In February 1982 all four were at Darden's home. Lee and Thomas had an argument, which brought Harris out from the bedroom into the kitchen, where she had a discussion with Lee. As Harris left the kitchen, she passed Thomas and gave him a "dirty look." Thomas then stabbed her in the back and killed her. Lee went into her aunt's bedroom and saw that she had a knife. Lee returned to the kitchen and picked up a butcher knife, which she took into her aunt's bedroom, and stabbed her aunt to death.

Both defendants gave statements to the police in which the described events took place. However, Thomas' confession referred to a *premeditated* murder plan, whereas Lee's confession suggested that Thomas had been provoked by her aunt's past behavior and "snapped" the night of the murders because he "just couldn't take anymore."

Defendants, represented by separate counsel, both withdrew motions to sever their trials and waived a jury. Neither testified at trial, except for the limited scope of the motions to suppress their statements, which motions were denied.

Lee was convicted and sentenced to 40 years for her part in the death of Odessa Harris and life imprisonment for the murder of her aunt.

One of the points that the Supreme Court emphasized in its opinion in *Lee v. Illinois* was the prosecution's erroneous attribution of part of Thomas' confession to Lee. Specifically, the State argued that Lee had admitted thinking about the murder plan and deliberately decided to go ahead with it. The trial court expressly relied on Thomas' version of the events, as substantive evidence against Lee. The trial court thus concluded that the premeditated nature of the plan negated Lee's defense of noninvolvement with Harris' murder and her less culpable mental state in connection with her aunt's murder, which was based on her statement that her aunt had grabbed a knife and that Lee had acted upon an unreasonable belief that the stabbing was in self-defense or, in the alternative, as the result of sudden, intense passion.

The Supreme Court held that since "Thomas' statement, as the confession of an accomplice, was presumptively unreliable and \*\*\* did not bear sufficient independent 'indicia of reliability' to overcome that presumption," it was erroneously admitted into evidence and improperly used against Lee. (*Lee v. Illinois* (1986), 476 U.S. 530, 539, 90 L. Ed. 2d 514, 525, 106 S. Ct. 2056, 2061.) Accordingly, the court vacated her conviction and remanded the cause to the State court, holding that the use of Thomas' untested confession against Lee violated her confrontation clause rights. The court further stated, however, that it did "not foreclose the possibility that this error was harmless when assessed in the context of the entire case against Lee," a determination best left to the State court. 476 U.S. 530, 547, 90 L. Ed. 2d 514, 530, 106 S. Ct. 2056, 2066.

In the pending case, Bonds and his two codefendants each admitted in his confession that all were in the victim's apartment, armed with guns. All intended to steal from her. At trial, the complaining witness testified in great detail as to the repeated rapes and deviate sexual assaults that Bonds and Gibson had subjected her to in the bathroom of her home during the armed robbery and home invasion. Most significantly, Bonds admitted in his oral statement to an assistant State's Attorney that he had forced the victim to perform oral copulation on him and that Gibson was in the bathroom with him at the time he was having sex with her.[1]

Burdine's confession corroborated Bonds' version, that it was Bonds and Gibson who were in the bathroom with the victim. Burdine

---

[1]Bonds claims that his statement to the police merely admitted that he was "high" on marijuana and had gotten a "blow job" from the complaining witness. However, even without the statements of Burdine and Gibson, or even his own admission, the victim's detailed testimony of the sexual assaults was clear and convincing and uncontradicted in any material respect.

also stated that Bonds later told him that he had gotten a "blow job" from the victim. Gibson's confession also corroborated Bonds' statement to the extent that it placed Bonds in the bathroom with the victim, but Gibson accused Burdine of being the second perpetrator of the sex offenses. Therefore, the codefendants' confessions did not place any additional blame upon Bonds or add significantly to his confession and in fact were "thoroughly substantiated" by his own admissions. That, plus the independent evidence of the complaining witness and her son, both of whom identified Bonds in lineups, appears to rebut the presumptive unreliability of the codefendants' statements.

It is readily apparent that in *Lee v. Illinois*, the use of Thomas' confession against Lee was of far greater potential prejudice than were the statements of Burdine and Gibson to Bonds, since Thomas' differed from hers on the key question of homicidal intent. Without Thomas' statement, there might well have been no other direct evidence of a premeditated murder plan. Lee might have been cleared of Harris' murder and possibly received a lesser conviction of voluntary manslaughter had only her statement been used against her.

In contrast, Bonds' admission, properly considered against him, was not varied in any material aspect by Burdine and Gibson, whose desire, if any, to shift or spread blame was confined to each other.[2] Neither disputed that Bonds was one of the two who were in the bathroom with the victim, as he admitted and as the victim had testified. Certainly the victim's testimony against Bonds stands as "independent indicia" of the reliability of the codefendants' confessions on the points concerning Bonds' role. Hence, their presumptive unreliability is rebutted. This contrasts with the situation in *Lee v. Illinois* since those victims were dead and could not give their version of the events leading up to their deaths.

Having distinguished the circumstances of *Lee v. Illinois* from those of the pending case, we acknowledge that our prior analysis of the *Bruton* issue was focused solely on the question of whether the confessions sufficiently interlocked and did not specifically address whether their presumptive unreliability was rebutted by independent indicia of reliability. As noted above, however, the detailed testimony of the victim, whose testimony was uncontradicted, and that of her son appears to satisfy the *Lee v. Illinois* court's requirement of independ-

---

[2]Burdine was not charged with, or convicted of, the sex offenses and he received a lesser sentence. He did not seek *certiorari* from the United States Supreme Court. Gibson, who did petition for *certiorari* (unsuccessfully), waived any *Bruton* error he may have asserted by failing to preserve it in his post-trial motion. *People v. Gibson* (1985), 137 Ill. App. 3d 330, 334, 484 N.E.2d 858, 861.

ent indicia of reliability.

■ Be that as it may, we rest our holding on our conviction that if a *Bruton* error occurred in the admission of Gibson's and Burdine's statements, it was harmless error beyond a reasonable doubt in the context of the entire case against Bonds. See *Schneble v. Florida* (1972), 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056.

■ The standard of review of an error of constitutional magnitude is that the court must find it to be not merely "harmless," but harmless beyond a reasonable doubt (*People v. Martin-Trigona* (1986), 111 Ill. 2d 295, 304, 489 N.E.2d 1356, 1360), and the reviewing court must be able to "safely conclude that a trial without the error would produce no different result" (*People v. Myles* (1985), 131 Ill. App. 3d 1034, 1044, 476 N.E.2d 1333, 1340). In *Fahy v. Connecticut* (1963), 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173, 84 S. Ct. 229, 230, the Supreme Court posed the question as "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

We find particularly pertinent the case of *Schneble v. Florida* (1972), 405 U.S. 427, 430, 31 L. Ed. 2d 340, 344, 92 S. Ct. 1056, 1059, in which the Supreme Court commented: "The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." The court further noted that "the independent evidence of guilt" in the case before it was "overwhelming" and that the "allegedly inadmissible statements of [the codefendant] at most tended to corroborate certain details of the petitioner's comprehensive confession." 405 U.S. 427, 431, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056, 1059.

The overwhelming and uncontradicted evidence against Bonds is such that we can easily conclude that the result would have been no different had the corroborative admissions of the codefendants not been admitted at trial. The testimony of the victim and her son, and Bonds' own confession, is sufficient to affirm his conviction on all counts, beyond a reasonable doubt. Consequently, we hereby reinstate Norman Bonds' conviction and sentencing.

Convictions and sentences of Norman Bonds reinstated.

McMORROW, P.J., and JIGANTI, J., concur.