(No. 36636.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EUGENE TYNER, Plaintiff in Error.

*Opinion filed January 22, 1964.*

RICHARD E. POWELL, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a jury trial in the criminal court of Cook County, the defendant, Eugene Tyner, and a co-defendant, Herbert Kelley, were convicted of murdering one James Toney and were each sentenced to the penitentiary for a term of 199

years. In prosecuting this writ of error, Tyner (hereafter referred to as defendant) contends that the lower court made prejudicial remarks during the course of the trial and also erred in admitting into evidence the co-defendant's written statement.

It appears that the deceased lived in the front first floor apartment at 2326 West Monroe Street in Chicago. Willie Holman and his wife occupied the rear first floor apartment, and defendant lived on the second floor at the same address. Shortly after midnight on the morning of January 15, 1961, defendant and Kelley visited the Toney apartment where Toney, Holman, and others were playing cards but left within a few minutes only to return approximately one hour later. When Kelley then became abusive, both he and defendant were ordered to leave, and upon their refusal an altercation followed during which Toney struck both men about the head and face with the metal top of a pressure cooker. Defendant and Kelley then left the apartment house, but about thirty minutes later they returned and rang for admittance to the first floor. Willie Holman came to the door from his apartment, where he had retired shortly after midnight, and upon recognizing the callers refused to open the door until he observed the gun which Kelley was carrying in his hand. Holman then raised his hands, stepped back from the door, and permitted their entrance. Although Holman again returned to his apartment, defendant and Kelley walked to Toney's apartment and a few seconds later three shots were fired by Kelley after which Toney staggered from the building to the street and there collapsed. Although defendant and Kelley admitted the shooting, they claimed it was done in self-defense.

Willie Holman testified for the State and upon cross-examination insisted that he did not know what caused the earlier altercation at the Toney apartment. Nevertheless, the court then proceeded to interrogate Holman concerning the same matter and when he repeated his answer the judge

remarked that Holman had "a terrible lapse of memory;" that he was "sick and tired of this kind of testimony;" that Holman was in a position to give the jury a "lot more information, beneficial to the State even if he would;" and that he was "lying like a goat." The court then concluded with this remark: "Very typical of these people when a killing takes place. They slip away and they don't know what happened. It leaves it up to the jury to surmise and you have to decide the case on circumstantial evidence."

Kelley testified upon his own behalf, and following his cross-examination by the State concerning a discrepancy between the witness's testimony and a prior written statement he had given the police relative to defendant's participation in the crime, the court continued to interrogate concerning the discrepancy, particularly referring to the contradictory written statement. The court later questioned defendant as to this same matter, and after defendant had testified that he struck Toney only in self-defense, the trial judge by further interrogation caused him to admit that Toney's alleged attack upon him occurred after the shooting.

Although a trial judge may question witnesses for purposes of clarification or to bring enlightment upon issues otherwise obscure, he should do so in a fair and impartial manner without showing bias or prejudice against either party and without impugning the credibility of any witness. Rarely, if ever, is a judge called upon to comment on the evidence during trial except where necessary in ruling upon its admissibility, and under no circumstances should he express an opinion as to its veracity, for this is the province of the jury, and any intimation of such nature, however slight, may carry great weight with the jury and could prove controlling. *People* v. *Marino*, 414 Ill. 445; *People* v. *Lurie*, 276 Ill. 630.

In the present case the trial judge openly accused Holman of lying and withholding information, and although

he was a State's witness, the court indicated that not only was he concealing facts beneficial to the State but that such action was "typical of these people." Holman, Tyner, and Kelley were negroes and regardless of what the judge may have meant by such remark, it had the capacity to create prejudice in the minds of the jurors. The court's interrogation of Kelley and defendant further served to emphasize weaknesses in their defense and to cast doubt upon their veracity. Such action was clearly improper. Although defendants did not offer immediate objection thereto, which would ordinarily be a prerequisite to review, we have heretofore held that a less rigid application of this rule must prevail where misconduct of the trial judge is involved. *People* v. *Sprinkle*, 27 Ill.2d 398; *People* v. *Bernstein*, 250 Ill. 63.

Following his arrest, Kelley gave the police a written statement outside defendant's presence wherein he indicated that defendant had voluntarily joined in the earlier altercation at the Toney apartment and had later beaten the deceased upon the back of the head with the pressure cooker top as Toney lay in the street. However, at time of trial both defendant and Kelley repudiated this account. Nevertheless, the statement was admitted into evidence without restriction and in his argument to the jury the State's Attorney, over defendant's objection, repeatedly referred to this statement in contending that defendant had beaten the deceased while he lay in the street and in questioning the veracity of defendant's testimony. We have repeatedly held that the confession or admission of a co-defendant is not admissible against the accused unless made in his presence or assented to by him. (*People* v. *Tunstall*, 17 Ill.2d 160; *People* v. *Clark*, 17 Ill.2d 486; *People* v. *Childress*, 1 Ill.2d 431.) Where, however, the participants are jointly tried and there has been no motion for severance, the confession of a co-defendant may be admitted if its admissibility is clearly limited to the participant who made the statement.

As to the other defendants it is pure hearsay. (*People* v. *White*, 28 Ill.2d 23; *People* v. *Vickery*, 321 Ill. 254.) Here the court made no attempt to limit the statement's applicability solely to Kelley but to the contrary the State was permitted, upon argument, to buttress its case against defendant with this hearsay statement. In our opinion the trial court erred in this respect. Although there was substantial evidence of guilt, the jury in the present case also fixed the penalty, and we cannot say under these circumstances that the above errors did not in some measure prejudice the defendant, particularly in view of the extreme severity of the sentence.

The judgment of the criminal court of Cook County is therefore reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*