THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW COLLINS *et al.*, Defendants-Appellants.

First District (3rd Division) Nos. 1—85—1663, 1—85—1680, 1—85—1975 cons.

Opinion filed March 22, 1989.—Rehearing denied June 21, 1989.—Supplemental opinion filed on denial of rehearing June 28, 1989.

Michael J. Goggin, of Oak Park, for appellant Andrew Collins.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant Michael Cantre.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant Darren Ellis.

Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Inge Fryklund, Maureen Harton, and Catharine M. Forest, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendants, Andrew Collins, Michael Cantre, and Darren Ellis, were charged by indictment with murder, rape, home invasion, residential burglary, and conspiracy to commit home invasion in connection with an incident which occurred on November 25, 1983. The three defendants were tried together at a consolidated jury trial. All three were convicted of all charged offenses except rape. The trial court sentenced each defendant to 40 years' imprisonment for murder, 15 years for home invasion, and 15 years for residential burglary. The sentences were to run concurrently. All three defendants appeal and raise a number of contentions.

For the reasons stated below, we reverse the judgment of the trial court and remand the matter for further proceedings.

The record indicates that in the early morning hours of November 25, 1983, a neighbor heard noises in the apartment of the victim. The neighbor then heard people running outside and someone falling down while trying to get over a fence. The person falling over the fence said, "Damn," and the neighbor recognized the voice as that of defendant Ellis. Later that day, Chicago police officer Pontoriero received a telephone call from an unidentified woman who said she overheard defendant Ellis bragging about robbing and killing a woman. The police went to the building where the victim lived, and as they were talking to the building's owner, defendant Ellis walked by. Ellis was taken to a police car and questioned. He admitted breaking into the victim's house on the night of the murder.

Ellis was taken to the police station. Initially, he named three accomplices. Then, he changed the names and named defendant Collins and "Skoony," whose real name Ellis believed to be Michael Washington. Police then brought Collins to the police station. On the way to the station, Collins saw defendant Cantre and identified Cantre as "Skoony."

Defendants Collins and Cantre were questioned by police and denied any knowledge of the victim's death. When Ellis was told that the others denied knowledge of the offense, Ellis named other accomplices, and Collins and Cantre were released from custody. The next day, Ellis was taken to the crime scene. He saw his grandmother there, and she told him to tell the truth. Ellis then told police that he participated in the killing and that his accomplices were defendant Collins and "Rat."

At a pretrial motion to quash, Chicago police detective Robert Anderson testified that he and his partner spoke with Doris McCummit, who had telephoned police regarding the offense. McCummit allegedly told Anderson and his partner that at 4:30 a.m. on November 26, 1983, she pulled off to the side of the road in her car near the victim's house. She saw defendant Collins and "Skoony" run out to the front and a third person run to the rear fence. The defense called Maggie Carr to testify in rebuttal. Carr stated that since 1981, she lived at the address which Doris McCummit gave police. Carr stated that no Doris McCummit lived there.

Detective Anderson further stated that on November 27, 1983, at 1 a.m., he and his partner went to Collins' home and arrested him. Defendant Cantre was located and arrested one hour later. Anderson questioned Collins and Cantre at the police station. Collins and Cantre gave oral and written statements. After a certain time, Collins told Anderson that he had "nothing else to say." Cantre also said that he did not wish to speak further. Anderson wrote in his report at 3 a.m. on November 27, 1983, that "at this time, both Collins and Cantre elected not to speak about the death of [the victim]." Anderson then ceased questioning defendants.

At 10 a.m. the same day, Chicago police detective Lawrence Poli questioned Cantre and Collins at the police station, after giving them *Miranda* rights. Poli had read Detective Anderson's report. Collins denied to Poli that he participated in the murder. Poli told Collins that Cantre had implicated him. Around 10:30 to 11 a.m., Collins confessed to his participation in the crime and gave a statement in the presence of a court reporter. Collins refused to sign the statement.

Prior to trial, all three defendants presented motions to sever their trials. The trial court denied the motions, on the basis that the confessions of the three defendants were "interlocking" and no severance was required. At trial the evidence included written confessions of all three defendants; testimony by police regarding their investigation; and alibi evidence presented on behalf of each defendant. Defendant Ellis testified at trial. Defendants Collins and Cantre did not.

On appeal all three defendants contend that the trial court committed reversible error in denying their motions for severance. Each defendant asserts that error occurred where the confessions of his co-defendants were admitted at trial and where defendants were denied the right to cross-examine Collins and Cantre, who did not testify at trial.

In *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, the Supreme Court recently held that "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, see *Lee v. Illinois,* [(1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056] ***, the Confrontation Clause [of the fourth amendment] bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." (*Cruz,* 481 U.S. at 193, 95 L. Ed. 2d at 172, 107 S. Ct. at 1719.) *Cruz* provides that a codefendant's statement must be considered presumptively unreliable when it interlocks with the defendant's own statement, where the defendant asserts at their joint trial that his own statement is not truthful. (*Cruz,* 481 U.S. at 193, 95 L. Ed. 2d at 171, 107 S. Ct. at 1718.) Therefore, such a statement by a codefendant is not admissible unless, as stated in *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, there is independent indicia of its reliability. (See *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026.) In *Lee* the Supreme Court stated:

> "If those portions of the co-defendant's purportedly 'interlocking' statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment." *Lee,* 476 U.S. at 545, 90 L. Ed. 2d at 529, 106 S. Ct. at 2064-65.

Further, in *Cruz,* the Supreme Court looked to and relied upon its earlier holding in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, in which it held that a defendant's sixth amendment right of confrontation is violated when the confession of his nontestifying codefendant naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. (*Bruton,* 391 U.S. at 137, 20 L. Ed. 2d at 485-86, 88 S. Ct. at 1628.) The sixth amendment's guarantee of the right of a criminal defendant "to be confronted with the witnesses against him" includes the right to

cross-examine witnesses. See *Richardson v. Marsh* (1987), 481 U.S. 200, 206, 95 L. Ed. 2d 176, 185, 107 S. Ct. 1702, 1706.

▉ The trial of the instant cause was held prior to the decision in *Cruz,* which rejected the analysis and holding previously set forth by the Court in *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132. In *Parker,* the Court had held that codefendants' confessions were admissible when proper limiting instructions were given to the jury where "the defendant himself has confessed and his confession 'interlocks' with and supports the confession of his codefendant." (*Parker,* 442 U.S. at 64, 60 L. Ed. 2d at 718, 99 S. Ct. at 2135.) In *Cruz,* the Supreme Court overruled the *Parker* holding, stating that the admission of a codefendant's interlocking confession would be "enormously damaging" if it confirms in significant part the defendant's confession, which the defendant seeks to avoid at trial. (*Cruz,* 481 U.S. at 192, 95 L. Ed. 2d at 171, 107 S. Ct. at 1718.) The trial court in the instant case denied severance on the ground that the confessions were admissible since they interlocked and were permitted as provided under *Parker.* Since the trial court denied severance based on grounds later rejected by the Supreme Court in *Cruz,* defendants' convictions must be reversed and the cause remanded for a new trial. See *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026.

The confessions in the instant case were similar in significant parts. Both Ellis and Collins admitted that they agreed with the others to break into the victim's apartment. Cantre denied that he agreed to break in, but admitted following the others into the apartment. All three defendants stated their belief that the victim would be home. The statements differ to some extent regarding the participation of each defendant in their actions once inside the apartment, although the actions described are essentially the same. Ellis stated that Collins tackled the victim, pulled up her clothes, and raped her while Ellis put a belt around her neck. Collins stated that Ellis and Cantre pushed the victim to the floor and Cantre raped her while Ellis placed his hands around her neck. Cantre stated that Ellis strangled the victim with a cloth. Further, Cantre stated that he saw Collins standing over the victim, and Cantre saw Collins' penis and saw Collins then zip up his pants. In addition, Ellis stated that while he and Collins were with the victim, Cantre was looking through the victim's purse for money. Collins stated that *he* went through the victim's dresser drawers looking for something to steal. Cantre stated that *he* went through the victim's drawers while the others were with the victim.

■ Under the sixth amendment analysis, the confessions must have independent indicia of reliability to be admissible since the statements interlocked with each other to a significant degree regarding the culpability of defendants, and since each defendant at trial denied the truth of his own confession by presenting evidence of an alibi. (See *Cruz,* 481 U.S. at 192, 95 L. Ed. 2d at 171, 107 S. Ct. at 1718.) While the confessions differ as to which defendant performed the alleged rape upon the victim and which defendant searched the victim's possessions, the confessions describe substantially similar actions. Further, this court cannot be unaware of the motivation for an accused to place the blame for an offense upon another. The State, therefore, would have to show an independent basis for the admission of the codefendants' statements in any new trial. See *Lincoln,* 157 Ill. App. 3d at 706.

■ In addition to a sixth amendment analysis, however, we must also examine the admissibility of defendants' confessions under Illinois evidentiary law. The Supreme Court has recognized that the sixth amendment analysis is separate from an analysis of admissibility of a codefendant's confession under the applicable State law. (See *Lee v. Illinois* (1986), 476 U.S. 530, 539, 90 L. Ed. 2d 514, 525, 106 S. Ct. 2056, 2061.) Under Illinois law, a codefendant's statements generally are inadmissible as hearsay against a defendant, unless the statements were made in the presence of the defendant or assented to by him. (*People v. Tyner* (1964), 30 Ill. 2d 101, 105, 195 N.E.2d 675.) In *People v. Duncan* (1988), 124 Ill. 2d 400, 530 N.E.2d 423, the supreme court noted that Illinois courts for a long time have viewed a nontestifying codefendant's statements which incriminate the defendant as incompetent evidence against the defendant. The court in *Duncan* stated, "Unless some other exception to the hearsay rule applied, we have allowed admission of such statements at joint trials only reluctantly, only with proper limiting instructions, and only if the statements are cleansed of *all references* to a nondeclaring defendant." (Emphasis in original.) (*Duncan,* 124 Ill. 2d at 414, citing *People v. Clark* (1959), 17 Ill. 2d 486, 490, 162 N.E.2d 413.) This rule against admissibility of codefendants' statements has been established in Illinois independent of the Federal constitutional right of confrontation and without express reference to the Illinois Constitution. (See *Duncan,* 124 Ill. 2d at 415.) The application of the rule involves a determination of whether admission of codefendants' statements constitutes prejudical error. See *Duncan,* 124 Ill. 2d at 413, 415; *People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413; *People v. Barbaro* (1946), 395 Ill. 264, 69 N.E.2d 692.

■ Under Illinois law, the admission of the codefendants' statements against the defendants in the instant case constituted prejudicial error. As stated in *Duncan*, a nontestifying codefendant's statements incriminating the defendant are incompetent evidence against the defendant. (*Duncan*, 124 Ill. 2d at 413-14.) In the instant case, only defendant Ellis testified at trial, while defendants Collins and Cantre did not. Therefore, the statements of Collins and Cantre, which in no way were purged of references to Ellis, and implicated each of the other codefendants in the crime, were improperly admitted against Ellis. Similarly, the statement of Collins was improperly admitted against Cantre and Ellis, and the statement of Cantre was improperly admitted against Collins and Ellis. The State provided no exception to the hearsay rule to allow the admission of the defendants' confessions in the joint trial. Accordingly, the trial court improperly denied defendants' motions to sever their trials. (See *Duncan*, 124 Ill. 2d at 412-16.) Defendants' convictions therefore must be reversed and this cause remanded for new trials.

Defendants raise a number of other issues on appeal. We will address the remaining issues insofar as those issues are likely to recur after remand.

Defendants Collins and Cantre assert that the trial court erred in denying their motions to suppress their confessions, under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, since the confessions were improperly obtained after defendants invoked their right to remain silent. Collins further contends that the confession was involuntarily given, since defendant was a minor and the custodial setting was overly coercive.

■ There is no *per se* proscription against the renewal of questioning by police after an in-custody defendant indicates a desire to remain silent. Rather, the admissibility of subsequent statements depends upon whether the defendant's right to terminate questioning was "scrupulously honored." (*Michigan v. Mosley* (1975), 423 U.S. 96, 104, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.) In *Mosley*, the Court found that the defendant's right to remain silent was scrupulously honored where there was renewed questioning of defendant because the police "immediately ceased the [initial] interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." *Mosley*, 423 U.S. at 106, 46 L. Ed. 2d at 322, 96 S. Ct. at 327.

In *People v. Colley* (1980), 83 Ill. App. 3d 834, 404 N.E.2d 378,

this court stated that exercise of a defendant's right to remain silent by declining a request to make a statement " 'does not permanently preclude all future inquiries by officers to determine whether he has changed his mind.' " (*Colley*, 83 Ill. App. 3d at 841, quoting *People v. Gibson* (1977), 55 Ill. App. 3d 929, 371 N.E.2d 341.) The court further provided that "[t]here is a clear distinction between the continuation of 'interrogation' and a subsequent request upon fresh *Miranda* warnings, for reconsideration of an earlier decision to make no statement." *Colley*, 83 Ill. App. 3d at 841.

Recently, the Illinois Supreme Court, in *People v. Foster* (1988), 119 Ill. 2d 69, 518 N.E.2d 82, *cert. denied* (1988), 486 U.S. 1047, 100 L. Ed. 2d 628, 108 S. Ct. 2044, *reh'g denied* (1988), ___ U.S. ___, 101 L. Ed. 2d 957, 109 S. Ct. 5, found that the defendant's right to remain silent was "scrupulously honored" under the *Mosley* test where, after initial questioning by police had ceased, an assistant State's Attorney spoke with the defendant after three hours had passed. The assistant State's Attorney gave the defendant fresh *Miranda* warnings and then told him that a witness had given a statement implicating him and that the police also had talked to another witness. The defendant then provided an oral and later a written statement. On appeal, the defendant argued that his right to remain silent was not "scrupulously honored" since he was questioned again about the same crime, unlike in *Mosley*, where reinterrogation was made of the defendant regarding a separate offense. The court in *Foster* held, however, that requestioning a defendant regarding the same offense does not of itself constitute a violation of *Miranda* rights. (*Foster*, 119 Ill. 2d at 86.) The court in *Foster* cites a number of cases in which courts have reached the same conclusion. See *Foster*, 119 Ill. 2d at 86-87.

■ In the instant case, the record indicates that defendants' right to remain silent was "scrupulously honored." After speaking with police detective Anderson for a certain time after their arrest, both Collins and Cantre stated that they did not wish to speak further, and Anderson ceased questioning them. Around 9 or 10 a.m., six or seven hours later, Detective Poli spoke with each defendant separately, first giving each of them fresh *Miranda* warnings. Further, the record indicates that defendants had not been interrogated between 3 a.m. and 10 a.m., and the record fails to indicate that the setting during that time was overly coercive.

Both Collins and Cantre initially told Poli that they did not wish to make statements. Poli stated that he then telephoned witness Doris McCummit and asked her to come to the station to view a lineup. Poli

returned to the room where Cantre was, advised him of his rights, and told Cantre about his conversation with McCummit. Cantre then provided a statement to Poli. After obtaining Cantre's statement, Poli gave Collins his rights and told him that Cantre had implicated him in the crime. Collins then confessed to his involvement in the offense. Under these circumstances, we find that defendants' rights were properly preserved. See *People v. Foster* (1988), 119 Ill. 2d 69, 518 N.E.2d 82.

■ Further, we do not find merit in Collins' assertion that the setting in the police station was overly coercive, in view of the fact that defendant was a minor. Defendant cites *People v. Travis* (1984), 122 Ill. App. 3d 671, 462 N.E.2d 654, where the court states that special care must be taken in reviewing a record involving a juvenile defendant, since a minor can be an "easy victim of the law" (*Haley v. Ohio* (1948), 332 U.S. 596, 599, 92 L. Ed. 224, 228, 68 S. Ct. 302, 303-04). (*Travis,* 122 Ill. App. 3d at 674.) In the instant case, however, the record fails to indicate that defendant Collins' will was overborne or that the setting under which Collins was held and questioned was overly coercive. The initial questioning of Collins ceased when defendant stated his desire to remain silent, and he was not questioned thereafter for over six hours. When Detective Poli spoke to Collins between 9 and 10 a.m., Poli asked defendant if he needed to use the washroom, and Collins was provided with something to eat. While initially denying his involvement in the offense, Collins later told Poli that he had in fact participated in the murder. We cannot find, under the circumstances, that Collins' statement was not voluntarily given. See *People v. Smith* (1988), 165 Ill. App. 3d 603, 518 N.E.2d 1382.

Defendant Ellis also asserts that his waiver of *Miranda* rights was not knowing and intelligent since the police continued to interrogate him even after an attorney retained by Ellis' family telephoned police and told police that he was coming to the police station. Ellis contends that his young age made it imperative that police cease questioning him upon learning that defendant's family retained an attorney.

■ Ellis' argument must fail in view of the holding of *Moran v. Burbine* (1986), 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135, which was applied by the Illinois Supreme Court in *People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270. In *Moran,* the Supreme Court held that a suspect's knowing and intelligent waiver of *Miranda* rights does not require knowledge that an attorney has been retained or information that the attorney has been in contact with the police or

has attempted to see the suspect. (*Moran,* 475 U.S. at 422-23, 89 L. Ed. 2d at 422, 106 S. Ct. at 1141-42.) The Court stated that "[o]nce it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Moran,* 475 U.S. at 422-23, 89 L. Ed. 2d at 422, 106 S. Ct. at 1142.

In both *Moran* and *Holland,* a relative obtained counsel for the suspect, who was unaware that counsel had been retained. Further, the attorney communicated with police and the prosecutors in those cases only by telephone. In *Moran* and *Holland,* it was determined that the defendants were given their *Miranda* rights and understood them, and further, that the waiver of those rights was valid even though the defendants were not told that counsel had been retained for them. See *Moran,* 475 U.S. at 422-23, 89 L. Ed. 2d at 421-22, 106 S. Ct. at 1142; *Holland,* 121 Ill. 2d at 153.

In the instant case, defendant apparently was told by the police or State's Attorney that an attorney had been retained by his family. Defendant therefore had the benefit of knowing that an attorney hired by his relatives was available to him. There is nothing in the record to indicate, even considering defendant's youth, that the police's conduct in communicating this information to defendant violated his rights. Even if defendant was not told of the attorney retained by his family, we find no violation here, in view of *Moran* and *Holland.*

In addition, defendant Collins asserts that he was not proved guilty beyond a reasonable doubt where his statement to police was the only evidence against him and his alibi defense was uncontradicted. Initially, we note that with regard to this argument, it is important that this court make a finding regarding the sufficiency of the evidence, so that the State is not given a second opportunity to produce evidence it failed to bring forth in the first proceedings, and that defendants are not, thereby, subject to double jeopardy on retrial. *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366; *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026.

 While a defendant cannot be convicted based on a confession alone, the other evidence in the case need not be sufficient in itself to prove the offense. (*People v. Neal* (1985), 111 Ill. 2d 180, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292, *reh'g denied* (1986), 479 U.S. 877, 93 L. Ed. 2d 182, 107 S. Ct. 257.) In order to establish both the *corpus delicti* and the essential trustworthiness necessary to corroborate a confession, there must be

some independent evidence (1) tending to prove that an offense occurred, and (2) corroborating the facts contained in the confession. *People v. Calhoun* (1984), 126 Ill. App. 3d 727, 467 N.E.2d 1037.

In the instant case, evidence was presented which corroborated Collins' confession and tended to prove that an offense occurred. For instance, police officers testified to the condition of the victim's home after the crime occurred. Further, the police testified regarding their investigation of the incident and the information they received from a neighbor who heard the sound of breaking glass in the victim's apartment and the woman who telephoned the police station to report that she saw three people running from the victim's house on the night of the offense.

Further, with regard to the alibi presented by Collins, the trial court was not bound to accept the evidence, but could properly consider it in relation to other evidence adduced at trial. (*People v. Worthen* (1982), 105 Ill. App. 3d 386, 434 N.E.2d 423; see also *In re Willis* (1980), 89 Ill. App. 3d 347, 411 N.E.2d 1126.) We find that there was sufficient evidence to support the verdict against Collins to permit retrial on the offenses charged. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366; *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026.) We point out that this court's finding regarding the sufficiency of the evidence for purposes of double jeopardy does not imply any binding holding regarding the guilt or innocence of defendants on retrial. See *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026.

Defendant Ellis also contends that his waiver of his presence during a portion of the hearing on his motion to suppress evidence was not made knowingly and intelligently. Ellis asserts that he was excused from the courtroom after the trial court told him that only legal argument would follow, where in fact further testimony, that is, a completion of the cross-examination testimony of Detective Gaudio, was given during defendant's absence.

A criminal defendant has a right to be present during every stage of the trial against him. (*People v. Woods* (1963), 27 Ill. 2d 393, 189 N.E.2d 293.) That right to be present is violated only when the defendant is excluded at a time when a hearing is being conducted which involves his substantial rights. (*People v. Miller* (1958), 13 Ill. 2d 84, 112, 148 N.E.2d 455, *cert. denied* (1958), 357 U.S. 943, 2 L. Ed. 2d 1556, 78 S. Ct. 1394, *reh'g denied* (1958), 358 U.S. 859, 3 L. Ed. 2d 94, 79 S. Ct. 18.) The purpose of "the general rule giving an accused the right to be present at a criminal prosecution, is to allow him to meet the witnesses face to face and sift the testimony pro-

duced against him." *People v. Hirschberg* (1951), 410 Ill. 165, 168, 101 N.E.2d 520; see also *People v. Martine* (1985), 106 Ill. 2d 429, 478 N.E.2d 262.

In the instant case, defendants were excused from the courtroom, at the suggestion of the trial court, during the cross-examination of Detective Gaudio by counsel for defendant Cantre. Counsel for defendant Collins already had cross-examined Gaudio on behalf of his client. Counsel for defendant Ellis was not given the opportunity to cross-examine Gaudio until after defendants had been excused from the courtroom, and therefore, Ellis was not present during his counsel's cross-examination of Gaudio.

Gaudio was one of the investigating police officers who went to the victim's apartment after learning of the offense and who obtained information regarding the alleged participation of Ellis in the incident. Gaudio helped to locate Ellis and conducted the initial questioning of Ellis, during which Ellis admitted that he had participated in a burglary. Gaudio therefore provided testimony which was important for the State's case against defendant, and accordingly, important for defendant to be aware of. Under these circumstances, we find that defendant Ellis was absent at a portion of the hearing which involved his substantial rights. *People v. Miller* (1958), 13 Ill. 2d 84, 112, 148 N.E.2d 455, *cert. denied* (1958), 357 U.S. 943, 2 L. Ed. 2d 1556, 78 S. Ct. 1394, *reh'g denied* (1958), 358 U.S. 859, 3 L. Ed. 2d 94, 79 S. Ct. 18.

The next issue for our determination, then, is whether defendant waived his right to be present during Gaudio's testimony. The State points out that Ellis and his counsel failed to object when the court asked if defendants wished to be excused from the courtroom. The record also indicates, however, that the trial court stated, "This is only dealing with legal arguments, if you go back into custody, or do you want to stay right here and listen to the legal argument." The trial court failed to state that further questioning of the witness would be allowed.

In order for a waiver of the right to be present to be valid, the waiver must be voluntary, knowing, intelligent, and "done with sufficient awareness of the relevant circumstances and likely consequences." (*Brady v. United States* (1970), 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1469, cited in *People v. Johnson* (1979), 75 Ill. 2d 180, 187, 387 N.E.2d 688; see also *People v. Martine* (1985), 106 Ill. 2d 429, 478 N.E.2d 262.) Under the circumstances here, defendant was not able to provide an effective waiver. (See *People v. Mallett* (1964), 30 Ill. 2d 136, 195 N.E.2d 687.) Defendant was

not informed that testimony would be provided by Gaudio. Defendant therefore effectively was denied an opportunity to "meet the witness[ ] face to face and sift the testimony produced against him." (*People v. Hirschberg* (1951), 410 Ill. 165, 168, 101 N.E.2d 520.) That defense counsel was present in the courtroom during the entire proceeding does not change the result, as an attorney cannot waive the right to be present on behalf of a defendant. (*Mallett,* 30 Ill. 2d at 142.) Accordingly, defendant is entitled to a new hearing on his motion to suppress evidence.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded to allow for separate new trials of defendants and for a new hearing on defendant Ellis' motion to suppress evidence.

Judgment reversed and cause remanded.

McNAMARA and RIZZI, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff has filed a petition for rehearing, asserting that, in accord with *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, and *Gibson v. Illinois* (1986), 476 U.S. 1167, 90 L. Ed. 2d 974, 106 S. Ct. 2886, this court must determine: (1) whether the record shows that there was an independent basis for the admission of the codefendants' statements under the "sufficient indicia of reliability" test; and (2) even assuming that this court finds the indicia of reliability insufficient, whether the admission of the codefendants' statements was harmless beyond a reasonable doubt.

In the original opinion in this case, this court cited *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026, in which the defendant's conviction was reversed and the cause remanded for a new trial where the trial court denied severance based on grounds subsequently rejected in *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714. The appellate court in *Lincoln* held that at the new trial, the State would be required to show an independent basis for admitting the codefendants' statements, which incriminated the defendant.

Plaintiff asserts in its petition for rehearing that contrary to the directive in *Lincoln,* the question of whether there is an independent

basis for the admission of the codefendants' confessions is one for the appellate court to determine rather than the trial court upon remand. Plaintiff cites *Gibson v. Illinois* (1987), 476 U.S. 1167, 90 L. Ed. 2d 974, 106 S. Ct. 2886, in which the Supreme Court directed that remandment be made to the Illinois Appellate Court for further consideration in view of the recently filed decision in *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056. On remandment from the Supreme Court, the appellate court in *People v. Gibson* (1987), 156 Ill. App. 3d 459, 509 N.E.2d 563, found that the defendant's confession had sufficient "indicia of reliability" to meet the *Lee* requirement. The court's decision upholding the defendant's conviction was based, however, on the court's finding that admission of the codefendants' statements was harmless error beyond a reasonable doubt. *Gibson*, 156 Ill. App. 3d at 464.

Similarly, in *People v. Mahaffey* (1989), 128 Ill. 2d 388, *People v. Smith* (1988), 172 Ill. App. 3d 94, 526 N.E.2d 849, and *People v. Dixon* (1988), 169 Ill. App. 3d 959, 523 N.E.2d 1160, the supreme and appellate courts of this State have applied the analysis set forth in *Cruz* and *Lee* based on the records before them, rather than remanding the cases to the trial court for those determinations. Accordingly, in the instant case we will address the questions raised in *Lee* and *Cruz* before remanding this case for further proceedings.

In the instant case, while the confessions of the codefendants "interlock" with regard to many of the actions that took place, the statements differ regarding the participation of each defendant in those actions. For instance, Ellis stated that Collins tackled the victim and raped her while Ellis put a belt around her neck. Cantre stated that Ellis strangled the victim. Cantre stated that Collins stood over the victim and that he saw Collins zipping up his pants. Ellis stated that while he and Collins were with the victim, Cantre looked through the victim's purse. Collins stated that *he* looked through the victim's belongings, while Cantre stated that he checked the victim's dresser while the other defendants were with the victim. The defendants thus "pointed the finger" at their codefendants with regard to participation in certain of the acts.

In addition, we must consider the circumstances surrounding the taking of the statements. The defendants provided oral statements to the police upon being questioned. Defendants Collins and Cantre were arrested after being implicated in the offenses by defendant Ellis. Defendant Collins helped police to locate defendant Cantre, and identified Cantre as "Skoony," the person to whom Ellis referred in his statement to the police. Each defendant knew that the others were

being held and questioned by police.

■■■ Further, there was limited corroborating evidence. While the State presented evidence that a woman named Doris McCummit had observed Collins, "Skoony," and a third person near the victim's home, the defense presented evidence that there was no Doris Mc-Cummit living at the address McCummit allegedly gave police. Further, all three defendants presented alibi evidence at trial, thereby denying the truth of the pretrial statements. Our review of the record as a whole fails to show that the statements of the nontestifying codefendants had sufficient independent "indicia of reliability" to withstand the presumption that a codefendant's statement implicating a defendant is unreliable and that, absent the opportunity for cross-examination, its admission against the defendant violates the confrontation clause. See *Lee*, 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056; *Cruz*, 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714; *People v. Dixon* (1988), 169 Ill. App. 3d 959, 523 N.E.2d 1160.

Further, we find that even in view of a violation of the confrontation clause, admission of the codefendants' statements was not harmless beyond a reasonable doubt. (See *Lee*, 476 U.S. 530, 547, 90 L. Ed 2d 514, 530, 106 S. Ct. 2056, 2065-66.) The evidence against the defendants included the police testimony regarding their investigation and the transcribed confessions of the defendants. Each of the defendants, however, presented alibi evidence in his defense at trial. Further, the defense impeached the State's evidence, given through the testimony of a police officer, that Doris McCummit saw Collins, "Skoony," and a third person run out from the victim's yard. There were no other eyewitnesses and the victim was unavailable. In view of the evidence provided, and the limited amount of evidence corroborating the defendants' confessions, we must conclude that the admission of the codefendants' statements was prejudicial to each of the other defendants, such that their admission was not harmless beyond a reasonable doubt.

For the foregoing reasons, we adhere to judgment previously entered by this court in the instant cause.

McNAMARA* and RIZZI, JJ., concur.

---

*Justice McNamara participated in the decision of this appeal prior to his assignment to the sixth division.