March 26, 1999

No. 
4-97-0852

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from 

Plaintiff-Appellee, ) Circuit Court of

v. ) Champaign County

RICHARD E. STEWART, ) No. 97CF343

Defendant-Appellant. )

) Honorable

) Thomas J. Difanis,

) Judge Presiding.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

On July 17, 1997, a Champaign County jury convicted de­fen­

dant, Rich­ard E. Stew­art, of two counts of predatory sexual as­

sault of a child under the age of 13 (720 ILCS 5/12-14.1(a)(1) (West 1996)).  In Au­gust 1997, the court sentenced defendant to two concurrent 18-year prison terms, granted him 169 days' cred­

it, and ap­plied the truth-in-sentencing provision, or­dering him to serve 85% of his pris­on term (see 730 ILCS 5/3-6-3(a)(2)(ii) (West 1996)).  De­fen­dant ap­peals, argu­ing (1) his attor­ney pro­

vided inef­fec­tive assis­tance, (2) the admission of hearsay evi­

dence violated his con­fronta­tion and due process rights, and (3) his judg­ment of sen­tence should re­flect day-for-day cred­it.  We re­verse and remand.

I. BACKGROUND

In March 1997, defendant was charged with two counts of predatory criminal sexual assault of a child under the age of 13.  720 ILCS 5/12-14.1(a)(1) (West 1996).  For ap­proxi­mately 1½ years prior to his arrest, de­fen­dant lived with his sis­ter, Christina, and her four chil­dren in Urba­na, Illinois.  The State al­leged defen­dant abused Christina's 11-year-old daugh­ter, T.N., dur­ing this time.

In July 1997, prior to defendant's trial, the court conducted a hearing to consider hearsay testimony pursuant to sec­tion 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 1996)).  At this hearing, T.N. testified during the time de­fen­dant lived with her mother he would hug her, kiss her on the neck and cheek, fon­dle and squeeze her breasts, place his fin­ger in her vagi­na and move it around, and place his mouth on her vagi­na.  T.N. stat­ed the abuse frequently oc­curred while fami­ly mem­bers were in the house.  T.N. revealed the abuse to her mother in March 1997.  T.N. also told an investiga­tor from the police depart­ment and Dr. Kathleen Buetow about the abuse.

Christina testified defendant began living with her and her children in October 1995.  In March 1997, she over­heard an argument between T.N. and her broth­er, D.N.  Christina took T.N. aside to dis­cuss sexual matters with her.  At this time, T.N. told Christina defendant had sexually molested her.  Christina stopped questioning T.N. and contacted the po­lice.  On cross-

examination, Christina stated she contacted her brother and sis­ter, who came to the house and spoke with T.N. for a few min­utes be­fore the po­lice were contacted.  Christina also stated she did not hear the sub­stance of T.N.'s argument with T.N.'s broth­er.

Police investigator Dan Morgan interviewed T.N. after Christina reported the abuse.  Investigator Morgan ex­plained to T.N. why he was called to the house and asked her open-ended ques­tions about the abuse.  T.N. told Morgan the last incident oc­curred two weeks earlier while defendant was helping with her homework.  At this time, defendant picked T.N. up and sat her on his lap while he kissed her neck and cheek.  He also fon­dled her breasts, reached his hand in her pants, inserted his finger in her vagina, and attempted to place her hands inside the front of his pants.  T.N. told Morgan similar incidents occurred two or three times per week.

T.N. explained to Morgan one episode in the laun­dry room when defendant picked her up, placed her on the wash­ing machine, pulled her pants down, and "licked her vagi­na."  This inci­dent occurred while T.N. was home from school because of ill­ness.  On cross-exam­ina­tion, Morgan stat­ed T.N. indicated her mother was home during the laun­dry room inci­dent and defendant stopped be­

cause her brother came home from school.  Morgan also stated some of T.N.'s time peri­ods and dates were vague.

Based on this testimony, the court concluded the time, con­

tent, and cir­cum­stanc­es surrounding T.N.'s hearsay state­ments made them reliable.  Accordingly, Christina and Investigator Morgan would be permitted to testify at the trial.

At the July 1997 trial, T.N. testified to a more de­tailed account of defendant's actions.  In addi­tion to the facts set forth above, she stated she spent the night at defendant's apart­

ment before he moved in with her moth­er.  On this night, T.N. slept in defendant's bed and he slept on the couch.  During the night, defendant got into bed with T.N., reached under her paja­

mas, and inserted his finger into her vagi­na and moved it around.  When T.N. became startled, defendant stated he thought she was someone else.

T.N. also provided greater detail regarding the laun­dry room incident.  She stated she was taking defendant's mail to him in the laundry room when he abused her and he stopped because he heard T.N.'s brother come home from school.  T.N. did not tell her mother about the abuse be­cause de­fen­dant told her he would go back to prison if she told anyone.

T.N. revealed the abuse after Christina overheard her arguing with D.N. about her involvement with a boy named "Mikey."  Christina asked T.N. if she was sexu­ally active.  T.N. denied any sexu­al ac­tiv­i­ty five or six times until Christina stated she would take T.N. to the doc­tor to de­termine if she was sexually active.  T.N. then asked her broth­er to leave the room and told Christina about de­fendant's abuse.

Christina testified T.N. had a good relationship with defendant when he first moved into her home.  However, T.N. be­

came belligerent with defendant, stating she hated him and wished he would move out, and their relationship deteri­orated through­out January and February 1997.

Investigator Morgan's testimony was similar to his tes­timony during the section 115-10 hearing.

Dr. Kathleen Buetow testified on behalf of the State.  At the time, Dr. Buetow was a pediatrician with Carle Clin­ic and a member of the child protection team, a group of professionals organized to evaluate abused or neglected children.  Dr. Buetow examined T.N. and found no physical injuries.  She stated her find­ings were consistent with the type of sexual abuse alleged.  Dr. Buetow's description of defendant's abuse as related to her by T.N. was con­sistent with T.N.'s testimony.

Defendant denied sexually abusing T.N.  He stat­ed he had a good relationship with T.N.  Char­acter witnesses tes­ti­fied de­fen­

dant was a good uncle and had a good relationship with T.N.  The court also informed the jury about defendant's prior felony con­

viction; however, the court instructed the jury this convic­tion only affected defendant's credibility.  The jury found de­fen­dant guilty on both counts.

In August 1997, the court denied defendant's posttrial mo­

tion for a new trial, which alleged (1) the State failed to re­veal Christina threatened T.N. with a trip to the doctor before she disclosed the abuse; (2) the court erred in allowing evidence of his prior conviction; (3) the State's use of hear­say violated his right to confront the wit­ness­es; and (4) the State failed to prove his guilt be­yond a reason­able doubt.  Thereafter, the court sentenced defendant.  This appeal followed.

II. ANALYSIS

A. Right To Be Present

Defendant asserts his ab­sence from the sec­tion 115-10 hearing violated his constitutional right to be present.  He contends the sec­tion 115-10 hearing was a critical stage of the trial; thus, his fail­ure to know­ingly waive his right to be pres­

ent re­quires re­ver­sal of his con­vic­tion.  See 
Peo­ple v. Col­lins, 
184 Ill. App. 3d 321, 334-35, 539 N.E.2d 736, 744-45 (1989).

The State contends defendant's failure to raise this issue before the trial court and in his posttrial motion forfeit­ed his right to raise it on appeal.  See 
People v. Pasch, 
152 Ill. 2d 133, 168, 604 N.E.2d 294, 307 (1992).  Fur­ther, the State asserts plain error did not occur because the fair­ness of defendant's trial was not un­der­mined by his ab­sence from the section 115-10 hearing.  See 
People v. Bean, 
137 Ill. 2d 65, 80, 560 N.E.2d 258, 264-65 (1990).

At the outset of the section 115-10 hearing, the fol­lowing dialogue took place:

"THE COURT: *** Mr. Barnes is here on behalf of the [d]efendant.  Do we antici­pate the [d]efendant's presence, coun­sel?

MR. BARNES: No your Honor.  I didn't ask him to be brought over."

However, defense counsel may not waive defendant's right to be present unless evidence shows defendant voluntarily, knowingly, and intelligently waived his right.  See 
Col­lins, 
184 Ill. App. 3d at 335, 539 N.E.2d at 745.  Here, the record does not support a finding of valid waiver.  In fact, defense counsel's response implies he did not give defendant a choice to appear at the hear­

ing.  Under these circumstances, defendant did not provide an effec­tive waiver.  See 
People v. Mallett, 
30 Ill. 2d 136, 142, 195 N.E.2d 687, 690 (1964).

A defendant is not denied a constitutional right every time he is not present during his trial; rather, his rights are violated when his absence results in a denial of an underlying substantial right, for example, the right to (1) con­front the wit­ness, (2) present a defense, or (3) an impartial jury.  See 
Bean, 
137 Ill. 2d at 81, 560 N.E.2d at 265.  Here, defendant asserts his absence during the section 115-10 hearing violated his right to confront the witnesses (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8) and his due process right (U.S. Const., amend. XIV, §1).  Con­se­quent­ly, we re­view this case under the plain error doc­trine.  See 
People v. Stack, 
261 Ill. App. 3d 191, 196, 633 N.E.2d 42, 46 (1994).

1. 
Confrontation Right

The confrontation clause preserves defendant's right to cross-examine the witness.  Cross-examination is the principal means for testing the veracity of witness testimony and is the "greatest legal engine ever invented for the discovery of truth."
  Kentucky v. Stincer, 
482 U.S. 730, 736, 96 L. Ed. 2d 631, 641, 107 S. Ct. 2658, 2662 (1987).  Thus, the court's objective is to strike a bal­ance be­tween the accu­racy and integ­ri­ty of the truth-

seek­ing process versus the strong inter­est in effective law en­

force­ment.  See 
People v. Bowen, 
183 Ill. 2d 103, 116, 699 N.E.2d 577, 585 (1998).

Rather than attempting to characterize a section 115-10 hearing as a critical stage, the court considers wheth­er ex­clud­

ing de­fen­dant from the section 115-10 hearing interferes with his op­por­tu­nity for effec­tive cross-examination.  See 
Stincer, 
482 U.S. at 740, 96 L. Ed. 2d at 644, 107 S. Ct. at 2664.  The abili­

ty to cross-examine prior to trial is not of "crucial signifi­

cance" provided defen­dant has the opportunity for cross-examina­

tion during the trial.  See 
Califor­nia v. Green, 
399 U.S. 149, 159, 26 L. Ed. 2d 489, 497, 90 S. Ct. 1930, 1935 (1970).  As long as defendant's right to cross-exami­nation at trial is secured, his confronta­tion right is not violated.  See 
People v. Keene, 
169 Ill. 2d 1, 12, 660 N.E.2d 901, 907 (1995).

In 
Keene, 
codefendant Hoover agreed to testify against codefendant Keene as part of a plea bargain.  However, prior to testifying, Hoover moved to withdraw his guilty plea.  As a re­

sult, the State sought, and was allowed, to question Hoover about his testimony outside the jury's presence to ensure he would testify as promised.  Keene was excluded from the 
voir dire, 
but defense counsel was present.  The supreme court held Keene's opportunity to cross-examine Hoover at trial was not interfered with; thus, Keene's confrontation right was not violated.  See 
Keene, 
169 Ill. 2d at 11-12, 660 N.E.2d at 907-08.

Here, defendant's absence from the section 115-10 hear­ing did not interfere with his right to cross-examine the hear­say wit­ness­es at trial.  Christina, Investi­ga­tor Morgan, and T.N. all appeared and testi­fied during the trial.  When "the de­clar­ant is not absent, but is pres­ent to tes­tify and to submit to cross-

examina­tion, *** the admis­sion of his out-of-court state­ments does not create a con­fron­ta­tion prob­lem."  
Green, 
399 U.S. at 162, 26 L. Ed. 2d at 499, 90 S. Ct. at 1937.  Defendant's op­por­

tunity to cross-examine these witnesses satisfied his con­fron­ta­

tion right.  See 
People v. Thom­as, 
178 Ill. 2d 215, 239, 687 N.E.2d 892, 903 (1997).

Defense counsel could have repeated any question heard dur­

ing the section 115-10 hearing.  See 
Stincer, 
482 U.S. at 740-41, 96 L. Ed. 2d at 644, 107 S. Ct. at 2664-65.  In fact, the section 115-10 hearing gave defendant the opportuni­ty to review the witnesses' testimony prior to trial, thereby providing him with the chance for more effective cross-examina­tion at trial.  Thus, defendant's con­fron­tation right was not violated.

2. 
Due Process Right

Defendant next asserts his absence from the section 115-10 hearing violated his due process right.  See 
Stincer, 
482 U.S. at 745-46, 96 L. Ed. 2d at 647-48, 107 S. Ct. at 2667-68.  He argues the section 115-10 hearing bore a substantial relation­ship to his opportunity to defend himself.  
Cf. Col­lins, 
184 Ill. App. 3d at 335, 539 N.E.2d at 745.  Consequently, his absence from this critical stage affected the fairness of the trial.  See 
Bean, 
137 Ill. 2d at 83, 560 N.E.2d at 265.

Due process requires the defendant be present "'to the extent that a fair and just hearing would be thwarted by his absence.'"  
Stincer, 
482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667, quoting 
Snyder v. Massachusetts, 
291 U.S. 97, 108, 78 L. Ed. 674, 679, 54 S. Ct. 330, 333 (1934).  The right to be present originates in the due process clause and is not an abso­

lute right.  "Thus, as long as a defendant's ab­sence from a por­

tion of his trial does not de­prive him of due process, there is no viola­tion of [his] *** right of presence ***."  
Bean, 
137 Ill. 2d at 83, 560 N.E.2d at 266.

De­fen­dant argues the section 115-10 hearing involved the admission of substantive evidence; therefore, his presence at the hearing was necessary.  See 
Col­lins, 
184 Ill. App. 3d at 335, 539 N.E.2d at 745.  In 
Collins, 
the court heard defendant's mo­tion to suppress evidence, during which defendant was excused from the courtroom.  Before he was ex­cused, the court informed defendant no further evidence would be heard.  However, the court heard evidence, including defense counsel's cross-exami­na­tion of the po­lice officer who investigated defendant, ques­tioned him, and obtained his partial con­fession.  See 
Col­lins, 
184 Ill. App. 3d at 334-35, 539 N.E.2d at 744-45.

The 
Col­lins 
court held the hear­ing in­volved important evidence for the State's case against defendant, thereby involv­

ing defendant's sub­stan­tial rights.  Further, defendant's waiver of his right to be present was invalid due to the court's mis­

lead­ing state­ment.  Thus, his absence from the hearing vio­lated his right to be pres­ent.  See 
Col­lins, 
184 Ill. App. 3d at 335-

36, 539 N.E.2d at 745.

In contrast to 
Collins, 
the State bore the bur­den of proof during the section 115-10 hearing.  See 
People v. Zwart, 
151 Ill. 2d 37, 43, 600 N.E.2d 1169, 1171-72 (1992).  Further, unlike the defendant in 
Collins, 
defendant was not present when T.N.'s allegations were made to her mother and the police inves­ti­ga­tor; there­fore, the im­pact his pres­ence may have had on the out­come of the hear­ing is specu­la­tive.  Here, the record fails to show what effect, if any, defen­dant's presence would have had on the accu­

ra­cy and integrity of the truth-seeking pro­cess.  See 
Stincer, 
482 U.S. at 747, 96 L. Ed. 2d at 648, 107 S. Ct. at 2668; 
Keene, 
169 Ill. 2d at 13, 660 N.E.2d at 908.

Because of the importance of section 115-10 hear­ings, however, we con­clude defendants have a due process right to be pres­ent at these hearings.  In some child sex abuse cases, hear­

say tes­ti­mo­ny may be the only evi­dence support­ing the victim's alle­ga­tions.  The out­come of the section 115-10 hearing is poten­

tial­ly the most impor­tant determi­nation during the case and bears a sub­stan­tial rela­tion­ship to defendant's abil­ity to estab­lish a de­fense.  While we ac­knowl­edge defendant's pres­ence dur­ing this hearing may have had no effect on the out­come of this case, the signif­icance of the hear­ing warranted his pres­ence, unless he volun­tarily, know­ingly, and intelligently waived this right.  See 
People v. Martine, 
106 Ill. 2d 429, 438-39, 478 N.E.2d 262, 266 (1985).

In rare circumstances not present in this case, the absence of a defendant at a sec­tion 115-10 hear­ing may be permis­si­ble.  Occa­sion­ally, in child sex abuse cases, the trauma suf­fered by the child-victim is too great for the child to testi­fy in front of the defendant without caus­ing addi­tional harm.  How­ever, the intent behind a sec­tion 115-10 hear­ing is to test the reli­ability of a child-victim's hearsay state­ments, and the most persua­sive evi­dence may be his or her own tes­ti­mo­ny.  Be­cause defendant's right to be present arises under the due process clause, the trial court must bal­ance defendant's role in as­sist­ing in his de­

fense against the risk of identifiable and sub­stan­tial injury to the child.  See 
Stincer, 
482 U.S. at 746 n.20, 96 L. Ed. 2d at 648 n.20, 107 S. Ct. at 2668 n.20.

Unlike defendant's confrontation right at trial under the Illinois Constitution (see Ill. Const. 1970, art. I, §8; 
People v. Fitzpatrick, 
158 Ill. 2d 360, 367, 633 N.E.2d 685, 688 (1994)), defendant's due process right to be present is not un­

equivocal during section 115-10 hear­ings.  If the State, as the proponent of the hearsay statement's reli­abili­ty, estab­lishes by a pre­pon­der­ance of the evi­dence the trau­ma to the child-vic­tim out­weighs the defendant's abil­ity to as­sist coun­sel, then the defen­dant may be excused from the court­room during the child's testi­mony with­out violating the defendant's due process right.

Here, the court did not weigh defendant's right and de­fen­

dant did not waive his right to be present during the sec­tion 115-10 hearing.  Accordingly, defendant's absence violat­ed his due pro­cess right (U.S. Const., amend. XIV, §1), there­by amount­

ing to plain error (134 Ill. 2d R. 615(a)).  We conclude the evidence was sufficient to find de­fen­dant guilty beyond a reason­

able doubt; therefore, de­fendant faces no risk of double jeop­ar­dy on retrial.  See 
Peo­ple v. Cruz, 
162 Ill. 2d 314, 374, 643 N.E.2d 636, 664 (1994).

Because we reverse based on a violation of defendant's due process right, we need not address the argument he received ineffective assistance of counsel.  Nevertheless, we address several of defendant's arguments based on the likelihood they will be raised during the new trial.

B. Hearsay Evidence

Defendant contends the admission of T.N.'s hearsay state­

ments violated his right to confront the wit­ness (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8).  He asserts section 115-10 is not a firm­ly rooted exception to the hearsay rule; so, admis­sion of T.N.'s out-of-court state­ments de­nied him his right to con­front the witness.  See 
Peo­ple v. Peck, 
285 Ill. App. 3d 14, 26-27, 674 N.E.2d 440, 449 (1996) (Cook, J., spe­cial­ly con­

cur­ring), cit­ing 
Idaho v. Wright, 
497 U.S. 805, 816, 111 L. Ed. 2d 638, 652, 110 S. Ct. 3139, 3147 (1990).

In 
Wright, 
the court held incriminating hearsay state­ments must bear adequate indicia of reliability to be admitted.  Reliability can be demonstrated through a firmly established hearsay exception or by showing particularized guarantees of trustworthiness.  See 
Wright, 
497 U.S. at 816, 111 L. Ed. 2d at 653, 110 S. Ct. at 3147.  Thereafter, this court held section 115-10 incorporates the 
Wright 
criteria, thereby allowing courts to admit hearsay statements under section 115-10 without violat­

ing defendant's confrontation right.  See 
Peck, 
285 Ill. App. 3d at 23, 674 N.E.2d at 447.

This court spe­cifically rejected the proposition the confronta­tion clause per­mits hearsay testimo­ny only if it (1) falls within a firmly root­ed exception or (2) is necessary be­

cause the declar­ant is un­available to testify.  See 
Peck, 
285 Ill. App. 3d at 23, 674 N.E.2d at 447.  Rath­er, so long as sec­

tion 115-10's safe­guards of reli­abil­i­ty are satis­fied, the hear­

say state­ments are admissi­ble without violating defendant's con­

frontation right.  See also 
Bow­en, 
183 Ill. 2d at 117-18, 699 N.E.2d at 586.

Here, the court found sufficient indicia of reliability during the section 115-10 hearing.  Accordingly, defendant's confrontation right was not violated and T.N.'s hear­say state­

ments were properly admitted.

C. Truth-In-Sentencing Provision

Defendant argues 
the trial court erred in apply­ing the truth-in-sen­tenc­ing provi­sion to his sen­tence (see 730 ILCS 5/3-

6-3(a)(2)(ii) (West 1996)).  See 
Peo­ple v. Pitts, 
295 Ill. App. 3d 182, 190, 691 N.E.2d 1174, 1179 (1998).  In 
Pitts, 
this court found Pub­lic Act 89-404 (Pub. Act 89-404, eff. Au­gust 20, 1995 (1995 Ill. Laws 4306, 4323-27)), which en­acted sec­tion 3-6-

3(a)(2)(ii) of the Uni­fied Code of Correc­tions, vio­la­ted the sin­gle sub­ject rule of the Illi­nois Con­stitu­tion of 1970 (Ill. Const. 1970, art. IV, §8(d)).  See 
Pitts, 
295 Ill. App. 3d. at 190, 691 N.E.2d at 1179.  Thus, he asserts the court may not apply section 3-6-3(a)(2)(ii) to his sen­tence, if he should be convicted again.

Recently, the Su­preme Court of Illinois also found Public Act 89-404 vio­lat­ed the sin­gle subject rule (Ill. Const. 1970, art. IV, §8(d)).  See 
Peo­ple v. Reedy, 
Nos. 85191, 85297 cons., slip op. at 7 (January 22, 1999) ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___.  The court fur­ther stat­ed Pub­lic Act 90-592 (Pub. Act 90-592, §5, ef­f. June 19, 1998 (1998 Ill. Legis. Serv. 1429, 1430 (West))), which both de­let­ed and recodi­fied the en­tire truth-in-

sen­tencing legis­la­tion, was the only cura­tive leg­isla­tion en­act­ed by the General As­sembly (
Reedy, 
slip op. at 11, ___ Ill. 2d at ___, ___ N.E.2d at ___), thus overruling 
sub silentio  Peo­ple v. Nicholson, 
299 Ill. App. 3d 256, 267-68, 701 N.E.2d 517, 525-26 (1998) (con­clud­ing Public Act 89-462, §280, ef­f. May 29, 1996 (1996 Ill. Laws 588, 655-58) was cura­tive leg­is­lation).  Ac­cord­

ing­ly, 
be­cause 
defendant's crime was alleg­ed­ly com­mit­ted be­fore June 19, 1998, the court may not apply the truth-in-sen­tenc­ing pro­vi­sion.  See 
Reedy, 
slip op. at 12, ___ Ill. 2d at ___, ___ N.E.2d at ___.

III. CONCLUSION

For the reasons stated, we reverse defendant's convic­tion and remand for a new trial.

Reversed and remanded.

MYERSCOUGH, J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

I disagree with the 
dicta 
that in some cases the ab­sence of a defendant at a section 115-10 hearing may be permis­sible (slip op. at 11-13).  In my view, the defendant is enti­tled to be present at a section 115-10 hearing to the same extent that he is entitled to be present during the taking of evidence at a trial.  In many child sex abuse cases, section 115-10 hearsay may be the only evidence supporting the victim's allegations.  At the section 115-10 hearing, no one can know with certainty whether the alleged victim will be called or be able to testify at trial.  The section 115-10 hearing is an important stage of the case against the defendant, unlike a pretrial hearing where only legal arguments are made.  In 
Stincer, 
defendant was excluded from a pretrial competency hearing for two child victims of sex abuse, but the court there stressed that the questions asked did not relate to the crime itself, but to general capacity to tell the truth.  See W. LaFave & J. Israel, Criminal Procedure §24.2, at 1011-12 (2d ed. 1992).

Finally, I stand by my special concurrence in 
Peck, 
that compliance with section 115-10 does not automatically satis­fy constitutional requirements.